IN THE

# SUPREME COURT

OF THE

## STATE OF LOUISIANA.

---

# EASTERN DISTRICT:
### NEW-ORLEANS, DECEMBER, 1832.

---

### BRUCE *vs.* STONE ET AL.

**APPEAL FROM THE COURT OF THE FIRST DISTRICT.**

In all cases where facts are alleged by defendants in avoidance of rights claimed by plaintiffs, the latter are supposed to deny all such allegations.

The presumption resulting from a similarity of *names*, unsupported by other circumstances, is not proof of the identity of a slave.

The verdict of a jury which is not a forced or improbable deduction from the evidence adduced, will not be disturbed by this court.

<div style="float:right">

EASTERN DIS.
*December*, 1832.

BRUCE
*vs.*
STONE ET AL.

</div>

In this case the plaintiff sought to recover of the defendants, jointly and severally, the sum of five hundred dollars, being the price of a slave named Charles, sold by plaintiff to defendants, by public act, on the 15th of May, 1830. The price was made payable in ninety days, in good merchantable ash wood, or in cash, at the option of the vendees, either of which after the expiration of the specified period, the defendants refused to pay.

EASTERN DIS.
*December*, 1832.
═══════════
BRUCE
*vs.*
STONE ET AL.

The defendants admitted the sale, and alleged that said slave was not free from the vices and maladies prescribed by law, and against which plaintiff had warranted him; that said slave died four days after the sale, of a disease which the plaintiff knew the slave had at the time of the sale; that said slave was a runaway at the time of sale.

On the trial, the testimony of Robert Montgomery, a witness for defendant, taken under commission in this case, showed that Taylor, one of the defendants, came to his plantation and told him the black boy then on board Taylor's sloop belonged to the defendants; that deponent did not know whether it was the same negro purchased from the plaintiff; that said negro died in one or two days afterwards, and he believes sometime about the middle of May, though every possible care had been taken to save him.

Simon Meilleur, another witness of defendants, testified that he was the keeper of the police jail in the city of New-Orleans, that he knew a negro belonging to plaintiff, named Charles, said negro was repeatedly in said police jail, was once or twice among the chain negroes, fell sick the last time he was among them, and was removed by plaintiff as appears by the said police jail books.

Upon this evidence the jury found for the defendants, and judgment having been rendered accordingly, the plaintiff moved for a new trial, on the ground that the verdict and judgment were contrary to law and evidence. The court below overruled this motion, and the plaintiff appealed.

*Macready*, for appellant, made the following points:

1. There is error in the verdict of the jury, and the judgment the court *a quo*, inasmuch as there is no proof in the record to show that the negro who died on Montgomery's plantation was the same, for the price of which the present suit was instituted.

2. The plaintiff's case is fully made out by the notarial act attached to his petition, but the defendants have totally fail-

ed to show, that the negro man *Charles*, mentioned therein, died of any redhibitory vice, or that he died at all.

*L. C. Duncan*, for appellees.

The evidence supports the verdict and judgment of the court, whence the appeal is taken.

The opinion of the court was delivered by MATHEWS, J.

In this case the plaintiff sues to recover the price of a slave named Charles, which he sold to the defendants on a credit of ninety days.

Their answer admits the purchase and agreement to pay the price as alleged by the petitioner. But they claim a release from their obligation to pay, in consequence of redhibitory vices and defects in the slave sold to them, and also on account of fraud committed by the vendor in concealing from them the circumstance of the slave being afflicted with a disease at the time of sale, called dysentery, and of which he died about four days after.

The cause was submitted to a jury, who gave a verdict for the defendants, and judgment being thereon rendered, the plaintiff appealed. Previous to the appeal, a motion was made for a new trial, not based on any specific grounds; but only on the general allegations, that the verdict and judgment were contrary to law and evidence. His counsel in this court assumes in his points, as filed, two grounds of error in the judgment rendered by the court below. First, That the defendants did not support their allegations in avoidance of the contract of sale by sufficient evidence to identify the slave Charles, who died, as being the same sold to them by the plaintiff. Second, That the record affords no proof of any redhibitory defects, &c.

The last error alleged by the appellant seems to be unsupported by the facts of the case. The testimony of the keeper of the police jail. raises a violent presumption, that the slave in question, was in the habit of running away from

EASTERN DIS.
December, 1832.

BRUCE
vs.
STONE ET AL.

his master immediately previous to the sale. But in all events, the fraud practised by the seller in concealing the disease of which the slave died, and so soon after the sale, would be a good cause of redhibition.

The evidence with regard to identity (as admitted by the counsel for the appellees,) is by no means conclusive, and the only question which remains for us to examine is, whether it be such as can justify the verdict of the jury under all the circumstances.

The only facts clearly established by the testimony in relation to this point in the cause, are, that the plaintiff sold to the defendants a negro man slave named Charles, on the 15th of May, 1830, and that about the middle of the same month a negro slave named Charles died whilst in the possession of the latter, at the plantation of R. R. Montgomery, on the Mississippi, below New-Orleans. Absolute or mathematical certainty is attainable only in abstract sciences. The highest degree of it, in relation to natural appearances, and the ordinary transactions of men, is what is called moral certainty, depending mainly on probabilities consequent from facts, and these probabilities vary from very slight to such as are so strong as to produce full conviction and persuasion on rational minds. The first rule of legal evidence is that the best which the nature of a case admits, shall be produced in support of facts alleged by one party to a suit, and denied by the other. The practice of our courts of original jurisdiction, does not admit of replications, consequently in all cases where facts are alleged by defendants in avoidance of rights claimed by plaintiffs, the latter are supposed to deny all such allegations, or at least all material to their defence against the pretensions of their adversaries; being in this respect in the situation of defendants. The denial of the plaintiff in the present instance, must be presumed to extend to the defects of the slave as alleged by the defendants, and also to his identity as being the same sold by him to them. The question then arises, whether in a legal point of view the evidence supports the fact of identity. The rule of evidence above stated has reference rather to the admissibility of tes-

In all cases where facts are alleged by defendants in avoidance of rights claimed by plaintiffs, the latter are supposed to deny all such allegations.

timony, than the effect which may be produced by it when admissible in relation to the conviction, belief or persuasion of the truth of facts alleged in the minds of those called on to judge and determine on such facts.   Men free and men who are slaves, (perhaps not much in accordance with the dignity of human nature,) are distinguished, one from another, by names arbitrarily given, as well as by their different physical and moral qualities; but the same name is often given to several individuals, whilst the bodily and mental structure of each separate individual is distinguishable from all others.   In the present case, the only prominent circumstance proven of the identity of the slave which died, with the one which was sold, is the name.   Although his death, so soon after the sale, might have deprived the defendants of the most certain means of identifying him, yet there were others in their power, such as showing by evidence that they were owners of but four slaves previous to his death, that they owned no other called Charles at the time when the slave in question died; that they were traders in wood, and that their course of trade was from New-Orleans down the river to the plantations below the city, and up again, &c., carried on in a small vessel, such as that on board of which the slave was employed. These additional proofs would certainly have strengthened the fact of identity resulting from the similarity of names. But without them, can we take on ourselves to say that the jury came to an incorrect conclusion on the facts of the cause as proven to them?   In answer to this question, it may *The presumption resulting from a similarity of names,unsupported by other circumstances, is not proof of the identity of a slave.* be stated, confidently, that the jurors were the proper judges in this matter, and being such, great weight must be accorded to their verdict.   Yet, if we, (who from the constitution of this court, must also judge of facts,) on an impartial and legal investigation of the evidence, feel ourselves bound to come to a different conclusion, the appellant ought to be relieved. The prominent facts proven as above stated, are that a negro man slave named Charles, was sold by the plaintiff to the defendants on the 15th of May, 1830, and that about four days after, a negro man slave named Charles, died in the possession of the latter, of a disease, which, from the nature of

the human constitution, he most probably had on or before the date of the sale. From this simple statement, it cannot be truly said that the verdict of the jury is contrary to evidence. This we deem, may be considered as weak, and possibly other men judging on it might have come to a different conclusion, but we are unable to say positively that the conclusion of those judges of the facts, was incorrect; it has the support of strong probability, a proper basis of conviction, belief and persuasion, in human affairs.

The doctrine which recognizes names as means of identification, in disputes about slaves, is laid down in the opinion of this court, pronounced in the case of *Johnson* vs. *Field*, reported in 6 *N. S. p.* 635. That was a suit to recover slaves in the possession of the defendant; they were named in the petition and their identity was not denied, either expressly or impliedly in the answer: a title was set up as derived from a source different from that alleged by the plaintiff. The decision of the Supreme Court, though contrary to that of the District Court, we believe to be correct. In the present case there is an implied denial of identity as to the slave whose price is sued for, and the one which the defendants allege to have died in their possession. But according to the facts as proven, (although they might have been strengthened by *adminicules*, probably within the power of the defendants) we are of opinion, that the finding of the jury was not contrary to evidence, or in other words, that it was not a forced or improbable deduction from the evidence adduced.

The verdict of a jury which is not a forced or improbable deduction from the evidence adduced will not be disturbed by this court.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs in both courts.