which under all the evidence in the case you find him fairly and justly entitled.

Defendant requested the court to charge the jury as follws:

"1. If you shoud find from the evidence that the conductor when he went into the sleeper demanded a ticket or cash fare from the plaintiff, Guy, who then refused either to produce a ticket or pay his fare, and if you further find from the evidence that Williams made no offer to pay Guy's fare, and that the conductor and Guy then went forward into the passenger coach, and that after the train left the siding at Enon Crossing, and while upon the main track the conductor pulled the bell cord to stop the train and then proceeded to eject Guy, using no more force or violence than was necessary to accomplish the purpose, then the fact that Guy's father when the conductor and brakeman, or brakeman alone, took hold of Guy to eject him, offered to pay his fare, did not entitle the plaintiff to the right to be carried to his destination upon that train, and in this event your verdict will be for the company, even though the train may not have come to a stop when the father offered to pay his son's fare."

Which request the court declined to give to which refusal the defendant excepted.

"2. The law implies that when a person enters the train of a company for the purpose of being conveyed from one point to another upon the line of its road, he will upon the demand of the conductor pay his fare for the distance to be traveled, and if he refuses to do so he forfeits his right to be carried as a passenger, and the company may treat him as a trespasser.

If therefore you should find from the evidence that the conductor demanded the fare of the plaintiff, Guy, while in the sleeper, and that Guy had no ticket and was unable to pay his fare, he thereby forfeited his right to be carried as a passenger, and his proposition to the conductor to go forward to the passenger coach and obtain the money from his father, if you find from the evidence that he made such a proposition, did not reinvest him with the rights of a passenger, nor did the subsequent offer of Williams while in the sleeper to pay the fare of Guy, if you should find that such an offer was made by Williams, have the effect to re-invest Guy with the rights of a passenger, and it was the right of the conductor to eject the plaintiff, Guy, from the train at an usual stopping place, or at a point other than a station or usual stopping place, provided care was taken not to expose him to serious injury or danger, and no more force or violence was used in ejecting him from the train than was necessary for that purpose; and if you find from the evidence that no more force or violence was used in the ejection of Guy than was necessary to accomplish his removal then your verdic will be for the company even though yo shoud find from the evidence that whe the conductor and brakeman, or the brakeman alone took hold of the plaintiff to eject him from the passenger coach the plaintiff's father offered to pay his fare."

Which request the court declined to give and to which refusal the defendant excepted.

"3. If you find from the evidence that the conductor demanded Guy's fare in the sleeper, and that he refused to pay, and that Williams did not offer to pay his fare, and that Guy did not offer to go forward and get his fare, and that upon Guy's refusal to pay the conductor pulled the signal cord to stop the train, in order to put Guy off, and that the conductor then went forward to get the brakeman to assist in putting Guy off, and that Guy followed the conductor into the passenger coach and that while the train was slackening its speed with a view to stopping in obedience to the pulling of the signal cord by the conductor, and the conductor and brakeman, or either of them, after the train slackened its speed took hold of Guy to put him off, and that concurrently with this taking hold of him Guy's father offered to pay the fare--this offer did not entitle Guy to remain on the train. And the conductor was justified in removing Guy from the train, even though the train had not come to a full stop at the time Guy's father offered to pay, and your verdict will be for the company in this event provided you find that the conductor in putting him off used no more force than was necessary to remove him."

Which request the court declined to give, to which refusal the defendant excepted.

Verdict for plaintiff. $633.80.

Motion for new trial overruled and judgment rendered for amount affirmed by circuit court upon plaintiffs entering a remittitur of so much of said judgment as exceeded $300.00.

T. E. Scroggy, for Plaintiff.

Charles Darlington, for Defendant.

---

(Superior Court of Cincinnati.)

General Term.

No. 3185.

ELIZABETH A. MORRISON v. THE EQUITABLE NATIONAL BANK.

(1.) In order that a surety may avail himself of the provisions of sec. 5833 Rev. Stat., it is necessary that his liability as surety be evidenced by the same written instrument which evidences the liability of the principal debtor.

(2.) A contract is to be distinguished from the instrument of writing which evidences it; hence, while a contract may be deduced from several writings which are or may be properly connected together or related to each other, or which were executed by the same parties at the same time in reference to the same subject matter, yet such several writings do not become integral parts of each other, so as to constitute a single instrument of writing, unless an intention so to constitute them is manifested by apt words incorporating one writing into the other and as a part thereof.

(3.) Exclusive of sec. 5833, the rule that a failure on the part of the creditor to proceed within a reasonable time against the principal debtor, after notice so to do by the surety, followed by said principal debtor's insolvency, will release the surety, is not law in the state of Ohio.

DEMPSEY, J.

The action below was brought by the defendant in error against the plaintiff in error, and was founded upon a written instrument in the nature of a guaranty, and of which the following is an exact copy:

"In consideration of the sum of one dollar and of other valuable considerations paid to me by the Equitable National Bank, of Cincinnati, Ohio, the receipt whereof is hereby acknowledged, I do hereby guarantee the payment of any note or notes which said The Equitable National Bank may discount for and on behalf of The Lytle Safe & Lock Company within the next two years from the date hereof. This guarantee however, is not to apply to any sum exceeding five thousand dollars, but need not necessarily apply to any sum the payment of which is already guaranteed to said bank by Mrs. Florida A. Price or any other person; it being my intention herein to guarantee the payment of any notes of the said Lytle Safe & Lock Company not exceeding in amount the sum of five thousand dollars which said bank may discount, the selection of the notes hereby guaranteed to be entirely at the option of said bank, and it is not to be understood that the validity of this guaranty is dependent upon condition that said bank shall not discount notes exceeding the amount of five thousand dollars, but may discount the notes of said company in any amount they see fit, and this guarantee is entirely without reference to any other guarantee which said bank may hold as to any notes discounted for said The Lytle Safe & Lock Company. And I do hereby waive demand and notice of protest of any of the notes hereby guaranteed.

'Witness my hand this 23d day of December, 1893.

(Signed)    "Elizabeth A. Morrison."

The bank claimed that relying on this guaranty, and under its terms, and within the two years time covered by said guaranty, it did discount for and on behalf of said Safe & Lock Company a note, of which the following is a copy:

"$5,000.00      Cincinnati, Ohio,"
                       "April 26th, 1894."

"Four months after date we promise to pay to the order of Equitable National Bank five thousand——dollars at Equitable National Bank. Value received.

"The Lytle Safe & Lock Co."

"Harley J. Morrison, Pres't.—G. W. Evans Sec'y. & Treas."

When the note became due and payable, demand was made of the maker for payment, but it wholly failed and refused to pay the same, nor has it ever paid the same or any part thereof. Payment of said note was then demanded from said Elizabeth Morrison, but she has refused and failed to pay the same, and a judgment for $5,000.00 is prayed against her. Mrs. Morrison answered to the claim of the bank, with three defenses, the second of which is the only material one to be considered by us here. She claims that she is not liable for the payment of the note in whole or in part because, on the 20th day of June, 1894, she was notified by the bank that it had discounted for the Safe & Lock Company a note for $5,000.00, and that the same was covered by the guaranty mentioned in the petition, and that said note would fall due on August 29th, 1894, and the bank would look to her for payment of the same under said guaranty if it were not paid by the makers at maturity, which note she claims is the one the bank bases its claim on. She further says that on September 1st, 1894, said note having matured on the preceding August 29th, she required the bank by notice in writing to commence an action on said note forthwith against said Safe & Lock Company, which, she claims, was the principal debtor, but that the bank did not commence said action forthwith or at all. She further claims that by reason of failure to bring this suit, she is relieved from liability for the payment of said note. In a reply to this second defense, the bank admits that the note for $5,000.00, payment of which they seek against Mrs. Morrison, is the same $5,000.00 note referred to in said second defense, but denies that any notice to sue on the note was given by Elizabeth A. Morrison, and then avers that the obligation of Mrs. Morrison to pay said note is based upon the written guaranty which was an independent contract binding her as a guarantor for the payment of the amount due on the note, and that such obligation and liability was not discharged by reason of any of the matters set out in said second defense. On the trial below there was a finding of facts and judgment in favor of the bank. Er-

ror is prosecuted here, a bill of exceptions having been also taken incorporating all of the evidence, on the grounds, that (1). The court erred in rendering judgment in favor of the defendant in error and against the plaintiff in error; and (2). The judgment should have been in favor of the plaintiff in error and against defendant in error. The facts of the case as disclosed by the pleadings, findings'of facts and bill of exceptions are substantially as follows: In 1893, and for some time prior thereto, the Lytle Safe & Lock Co., which was a Kentucky corporation, had been a customer of and borrower from the Equitable National Bank. On September 23d, 1893, the Safe & Lock Company, in order to secure a loan from the bank procured from Elizabeth A. Morrison the guaranty hereinbefore set out, and delivered the same on that date to the bank, and thereupon, on that same day, and on the faith of that guaranty, the bank discounted for the Safe & Lock Company a note for $10,000.00 payable in four months, that is, on April 26th, 1894. This note for $10,000 was not paid on April 26th, 1894, but instead was renewed, by being split up into two notes for $5,000.00 each, payable respectively in three and four months from their date. The four months note was attached to the guaranty by the bank, and the guaranty was by the bank selected to cover it. The three months note we have nothing to do with. The copy of the note hereinbefore given is a copy of this four months note; it matured August 29th, 1894, and was not paid, and on that same day the following notice was sent to Mrs. Morrison by the bank, Mr. Blair being the cashier:

"Cincinnati, August 29th 1894.
"Mrs. E. A. Morrison,
        "Owen Cottage,
                "Catawba Island, Ohio.
"Dear Madam:
"The note of the Lytle Safe & Lock Company for $5,000.00 due this day has not been paid, and unless you are willing to renew your guarantee, we shall be obliged to look to you for payment under guarantee now held by us. Please advise us as to your wish in this matter, and oblige,
"Yours Respectfully,
                "J. M. Blair."

Thereupon, on September 1st, 1894, Mrs. Morrison caused the following notice to be sent to the bank:

"Cincinnati, Sept. 1st, 1894.
"To George Fisher, President, J. M. Blair, Cashier, nad The Board of Directors of the Equitable National Bank of Cincinnati, Ohio.
"Gentlemen:
"You are hereby notified to commence an action forthwith against The Lytle Safe & Lock Company, of Cincinnati, on a certain note for $5,000.00, due August 26-29, 1894, made by said company and discounted for said company by your bank, and on which you have alleged Mrs. Elizabeth A. Morrison to be liable as surety.
"Very Truly Yours,
        "Elizabeth A. Morrison,
"By Wm. P. Morrison, her agent in this behalf."

Some question was made in the bank's reply and in the evidence as to Wm. P. Morrison's authority to act for Mrs. Morrison, and also as to the validity of a notice of this kind given by agent, but these questions are not material here just now.

At any rate, the bank did not bring any suit as requested by the notice, and on September 30th, 1894, the Safe & Lock Company went into the hands of a receiver under the orders of this court. The Safe & Lock Company was actually insolvent at the time Mrs. Morrison's request to sue was given. The receiver of the Safe & Lock Company paid to the bank $900.00 which was by it credited upon the $5,000.00 note. and the suit below was for the balance due with interest on the same.

Mrs. Morrison claims to be released from liability for the amount of this note on two grounds: First, by virtue of the provisions of sec. 5833, Revised Statutes, and, second, if not under the statute, then under the general rules of law regulating the rights and liabilities of a surety and the creditor as dependent upon the creditor's conduct toward the principal debtor. Other questions were made in the case and discussed on the hearing, but as the disposition of the question arising under the request to sue disposes of the whole case, we have not deemed it necessary to express any opinion on the other questions.

Section 5833, Revised Statutes, provides as follows: "A person bound as surety in a written instrument for the payment of money or other valuable thing, may, if a right of action accrue thereon, require his creditor, by notice in writing to commence an action on such instrument forthwith against the principal debtor; and unless the creditor commence such action within a reasonable time thereafter, and proceed with due diligence in the ordinary course of law to recover judgment against the principal debtor for the money or other valuable thing due thereby, and to make by execution the amount thereof, the creditor, or the assignee of such instrument, so failing to comply with the requisition of such surety, shall thereby forfeit the right which he would otherwise have to demand and receive of such surety the amount due thereon."

It was held by the court below that the provisions of this section will not be available to a surety unless he appear upon the same instrument upon which the principal debtor is liable, and we concur

in that holding. Counsel for plaintiff in error do not seriously combat this construction; they do contend, however, that the same instrument does not necessarily mean a single writing, but may consist of two or more writings if they be properly related to or connected with each other. In a general sense this proposition is true, but in the application of the proposition, it is well at the outset to have a clear conception of the meaning of terms used. The statute deals only with the instrument of writing, not with the contract, for a "contract is not to be confused with the instrument of writing which witnesses it." Erwin v. The Bank, 5 La., 4.

It is undoubtedly true that the terms of a contract may be ascertained from several writings even though executed at different times, and that such writings, when executed between the same parties about the same subject matter, will be held as one instrument and construed together in order to get at the contract. But that is not the question in this case. If any thing, it is the converse. We have two contracts in this case about neither of which is there any uncertainty or ambiguity; each of these contracts relates to the same subject matter, but the evidence of these contracts is by separate written instruments. The object sought by plaintiff in error is to combine those two instruments into one instrument. not to ascertain what the parties to both instruments meant, for that we already know, but in order that one party may avail himself of privileges accorded by the statute to debtors on a single instrument.

The case of Neil v. Trustees, 31 Ohio St., 15, does not aid in the solution of the question involved, for the surety or guarantor in that case expressly annexed to his own written contract, and made a part thereof, the written contract of the principal debtor, so that the principal debtor's written contract by the act of the surety was as much a constituent part of the surety's written obligation as if it were inserted *in totidem verbis*, and both surety and debtor had signed at the bottom. Nor will the rule which permits parol evidence to identify the subject matter of the contract in order to apply such contract to that subject matter benefit the plaintiff in error, for that rule contemplates the subject matter of the contract as a fixed, definite thing or fact concerning which the contract is made or upon which it is to operate. Thus, in this case, the notes discounted, of necessity, would be uncertain as to time and amount, and parol evidence was admissible to identify the particular note which was discounted and for the payment of which Mrs. Morrison was liable under the guaranty. But the language of the note and the signature of the Safe & Lock Co. do not become an integral part of the written instrument, which Mrs. Morrison signed, any more than a particular house of A's would become a part of a written instrument which provided that B. should paint in a certain time such houses of A's as A should designate, and A designated this particular house.

We know of no rule of law or of construction which, in the absence of express provision, will permit the combination or association together, as one single instrument, of two or more written instruments considered merely as instruments, and without reference to the contracts or obligations or rights or liabilities which they create or evidence. If the two instruments in this case were combined into one, they would still be evidence of two separate and distinct contracts, not of one contract, so that all rights and liabilities of the respective parties would be in no wise changed save as to the privileges granted by sec. 5833. That, joined even as they were in the Neil case, they still constitute two separate, several contracts is settled in the Deming case, 31 Ohio St., 41-49-50, which was a parallel case with the Neil case, and arose out of the same transactions. But the statute itself, we think, furnishes the strongest argument against conjoining, except by express provision or direct reference, two or more instruments as one instrument.

It is said that the statute must be liberally construed because it is remedial, and because our code, of which it is a part, so provides.

Liberality of construction means generally that the spirit and not the letter of a statute is to be looked to; that we must consider the substance of transactions, and not the form. But the very thing this statute deals with is the form of the transaction of suretyship. If the question in dispute were suretyship as contra-distinguished from guaranty, it might well be said that this statute was intended to embrace every indemnitor whose obligation partook of the nature of a suretyship so that it might well include absolute and unconditional guarantors. But as we have read the statute it does not include all sureties, but instead all such sureties as sign with their principal debtor on the same instrument of indebtednesss. Hence, the form of the suretyship becomes very material under the statute, in view of the rights and privileges conferred upon the surety; the principal creditor has rights under his contract also, which are not to be lightly dealt with by construction; debtors and sureties are supposed to know the statutes and to contract with reference to them; and especially ought this to be so when special privileges are conferred because of the form of the contract. The rule in Neil v. Trustees, supra, has gone to the very limit of judicial construction, as is evident from the comments in Deming v. Trustees, supra, by the same judge who

delivered the opinion in the Neil case, and who refers at page 51 to the dissenting opinion of Hitchcock, C. J., in Gale v. Van Arman, 18 Ohio, 336, upon which case and some few preceding cases the decisions in Neil and Deming v. Trustees seem to be based, although on examination of all of those cases, it will be found that the surety or guarantor signed on the same piece of paper with his principal. Having in view all of these considerations, we do not feel that we can go beyond the rule in the Neil case, supra, and hence there being no express provision in either of the writings of Mrs. Morrison or the Safe & Lock Co., incorporating into or annexing to it the other writing, we must hold that Mrs. Morrison's guaranty was a separate and distinct instrument from the Safe & Lock Co. note, and hence that she is not entitled to the benefits of this statute.

The plaintiff in error, however, contends that under the general doctrines of law regulating the liability of sureties, Mrs. Morrison is entitled to be released because of the neglect of the bank to sue, and the subsequent insolvency of the S. & L. Co. It is very doubtful whether this doctrine of the law of suretyship ever prevailed in Ohio, and, if it did, it is more than doubtful whether it was not impliedly repealed by the enactment of this very sec. 5833, and its predecessors.

Counting sec. 5833, as the enactment of a new statute, we have had three statutes in Ohio, all practically alike, regulating this requirement to sue and the effect thereof. The first statute was passed February 22, 1820, and can be found in 29 O. L., p. 461, and in Swan's Statutes, p. 877; this act was repealed March 11, 1853; in 1864, February 29th, the second act was passed, Swan & Sayler, 741, and this act was carried into the Revised Statutes, as sec. 5833.

In Jenkins v. Clarkson, 7 Ohio, pt. 1, p. 72, this identical question was raised under the statute of 1820, and the court, at p. 74, say "Since this statute was passed, the common law rule has not been in force in this state; and it is unnecessary to imagine what its provisions are, for it has given place to the statute, and is repealed by it," etc.

It is true the question arose on the form of the notice, which in that case was verbal while the statute required a written notice; but to obviate that discrepancy, counsel, as in this case, relied on the alleged general doctrine of release in case of insolvency after notice to sue, and in answer to that the court gave expression to the above statement. But be that as it may, we have examined the authorities cited by the trial judge on this question and his conclusions as to the weight of authority and the precedents we ought to follow, as also, his conclusions as to the time when the S. & L. Co. became actually insolvent, and we are satisfied

with the correctness of all his conclusions on those questions. See 5 N. P., 290.

We have not examined at any length into the questions made upon the right to contradict in toto the consideration clause of Mrs. M's guaranty, nor upon the construction of that instrument as to whether she was surety or guarantor. For the purposes of this opinion we have conceded as true the contentions of counsel for plaintiff in error.

A majority of the court think that the judgment of the court below ought to be affirmed, and it will be so ordered.

Davis, J., concurs; Jackson, J., dissents.

Edward Colston, for Plaintiff in Error.
Jno. R. Sayler, contra.

———

Dissenting Opinion.
JACKSON, J.

I am unable to agree with the majority of the court in the conclusion reached in this case. On behalf of the defendant in error it was contended that Mrs. Morrison was not entitled to the benefit of the provisions of sec. 5833 for three reasons: the first being that she was not a surety, but a guarantor, it being the contention of counsel for the bank that only sureties strictly speaking could by notice require a creditor to bring suit against the principal debtor according to the terms of this section of the statutes. The second reason was that the recited consideration of one dollar, made Mrs. Morrison absolutely liable to the bank upon a separate and independent contract of indemnity. The third reason was that although she might be a surety, and although the recited consideration of one dollar might be contradicted and the real consideration shown, nevertheless the surety for the purpose of this statute must be bound upon or in the same instrument as the principal debtor: and it was argued that because Mrs. Morrison's name did not appear on the note given by the Lock company to the bank but only upon a separate paper, she was not bound in the same instrument upon which she demanded that suit be brought against the Lock company; that she was in fact bound upon a separate and distinct instrument; and inasmuch as a party can claim the benefit of the statute only when he is a party to or bound in the same instrument upon which suit is demanded to be brought, the plaintiff in error did not belong to that class of sureties intended to be protected by said sec. 5833. In fact, it was argued by counsel and decided by a majority of this court, that this statute was intended only for the benefit of those sureties who were so fortunate as to have their names appear on the same piece of paper which evidenced the indebtedness of the principal debtors.

The first proposition was strenuously urged by counsel for the bank, and while the court below did not determine whether a guarantor may be regarded as a surety within the meaning of sec. 5833, I do not understand that the majority of this court seriously contend that the plaintiff in error is not to be regraded as such surety. Indeed, this must be considered to have been definitely determined by the supreme court of this state in case of Clay v. Edgerton, 19 Ohio St., 549, where it was held that the owner and holder of a promissory note who endorsed thereon the following: "I guarantee the payment of the within note to C. Edgerton or order" became liable upon an absolute and unconditional guaranty, and no demand and notice was requisite to make a prima facie case for recovery thereon against the guarantor. In this case the court said: "Where the guaranty of payment is absolute and unconditional, we are of opinion that it is not necessary, in order to make out a prima facia case for recovery, to aver or prove either demand or notice". Thus the supreme court of this state has assimilated for all legal purposes those who "guarantee" the absolute and unconditional payment of money and those who expressly describe themselves as "surety", for one of the essential features of suretyship is that the surety is liable primarily and without notice of any default by or demand of payment from the principal obligor, while in guarantyship strictly speaking the guarantor is liable only upon some contingency and after demand upon the principal obligor and notice of the default given to the guarantor. In this case it is clear that Mrs. Morrison's obligation was for the absolute and unconditional payment of money, and it is impossible therefore to deny that under the decisions in this state, her rights and obligations are the same as one who had expressly described himself as "surety".

The court below laid great stress upon the circumstance that the instrument of guaranty in this case purported to be in consideration of one dollar paid by the bank to the guarantor. In consequence it was held that the instrument of guaranty was supported by a consideration quite independent of the consideration which makes the principal liable to the creditor. If I understand aright, this proposition is not adhered to by any member of this court in this case. The court below made findings of fact separately from its conclusions of law, and in such findings of fact there appears the following: "That the one dollar named in said guaranty as a consideration never passed; the only other valuable consideration therefor being the discounting of the notes herein mentioned." The general proposition contended for by counsel for the bank, viz: that a recited consideration in an instrument can not be disproved for the purpose of defeating the legal effect of the instrument, may be conceded. But we think this objection is clearly and explicitly obviated for the purposes of this case by the provisions of sec. 5832, R. S. O., which provides as follows: "In contracts for the payment of money to banks or bankers, sureties in fact, known to the parties to be such at the time such contracts were made, may be proved, and shall be considered in all courts to be sureties, and have all the privileges of sureties, anything in the contract expressed to the contrary notwithstanding." It must be apparent that this provision was intended to permit sureties in fact in contracts with the banks, to contradict recited considerations moving to them in order to maintain their rights as sureties, for the statute says "anything in the contract expressed to the contrary notwithstanding." Independently of this statute, it was held by the supreme court that an implied independent consideration might be contradicted for the purpose of permitting a surety in fact to give notice to sue the principal debtor under a statute similar to sec. 5833.

In the case of Insurance and Trust Co. v. McCague, 18 Ohio, 54, it was held that an accommodation drawer and endorser of a bill of exchange could by notice given, require the holder to proceed against the acceptor on the bill, and failing so to do it was held that the loss must fall on the holder. Now assuredly the drawer of a bill of exchange is liable as drawer upon a consideration implied by law, and his obligation as drawer could not ordinarily be defeated by showing want of consideration and that the holder knew that he was simply an accomodation drawer. But nevertheless, independently of sec. 5832, he was permitted under a section similar to sec. 5833 to show that he was merely a surety, and permitted to require the holder to proceed against the principal. In deciding this case the court used the following significant language which will have an important bearing on the next proposition to be considered, viz: "It is therefore expedient that such rules shall be applied to the system of securityship, in all its various ramifications, as that the least possible burthen may be thrown on those who are willing and able to incur liabilities for others."

In the case of Buck v. Bank of Ga., vol. 30, S. E. Rep., p. 822, to which I will hereafter refer more fully, it was held that the maker of a note which recited that it was given for the purchase money of land could show by parol that he owed the payee no money for land or for any other purpose; and that the note was given merely as security for another note signed only by the payee in the first named note and discounted by the bank, so that an extension of time for a valu-

able consideration by the bank to the principal debtor on the note signed by him alone was held to release the maker of the note which expressly recited a consideration moving to him as maker.

But let us come to the proposition mainly relied upon by the court below and which I believe is solely relied upon by the majority in this court; it is that Mrs. Morrison is not liable upon the same instrument upon which her principal—the Lock Co.—is liable—the company being liable upon its promissory note, and Mrs. Morrison being liable upon her separate guaranty in writing. It will be noted that sec. 5833, provides that "a person bound as surety in a written instrument for the payment of money or other valuable thing, may if a right of action accrue thereon, require his creditor by notice in writing, to commence an action on such instrument forthwith against the principal debtor," etc., and it is argued that this section is intended for the benefit of such sureties only as have their names written upon the same instrument which evidences the indebtedness of the principal obligor. To my mind this is sacrificing substance to form and amounts to denying a surety, such as Mrs. Morrison is in this case, a substantial right intended to be given by statute. I construe this section to be intended for the relief of all sureties who are bound by, through, or by reason of the written instrument which evidences the indebtedness of the principal debtor, if such written instrument must necessarily be considered as a part of the written contract of guaranty. That is, if the contract of guaranty does not show upon its face a full and complete obligation without reference to some other writing, but if reference to some other written instrument must necessarily be made in order to complete the obligation of the guarantor, then the two writings form but one contract, or in other words, but one instrument, and the guarantor's liability must be considered as attaching to both writings which go to make up the one contract or written instrument. In this case it is clear that the paper signed by Mrs. Morrison was not in and of itself a complete instrument of guaranty. It did not provide for the payment of any particular note, but the bank was merely given the opinion of selecting any note not to exceed $5000, to be covered by the guaranty. Practically therefore it was a guaranty containing a blank clause which was thereafter to be filled up by action on the part of the bank. This blank clause was filled by the bank when it selected a note for $5000 and wrote thereon "secured by guaranty"; and when it thereafter wrote Mrs. Morrison, (as appears from the findings of fact) that it had selected this particular note to be covered by her "blanket" guaranty. In so doing the note became an essential

and component part of an instrument of guaranty; the two papers became then one instrument with the same legal force and effect as if her name had been signed to both papers which were necessary to complete the one transaction. It is elementary that one paper may contain two or more separate and independent contracts, as for instance that of maker and endorser on the same note; and it is equally elementary that two or more paper writings may be necessary to complete one contract, or one written instrument. A familiar example of the latter and one that is entirely analogous to the case at bar is found in the requirements necessary to satisfy the statute of frauds. Section 5 of the statute of frauds provides that "no action shall be brought whereby to charge the defendant upon any contract for the sale of lands, etc., unless the agreement upon which such action is brought or some memorandum or note thereof shall be in writing and signed by the party to be charged therewith." It will be noted that the statute expressly says the agreement or memorandum must be signed by the party to be charged therewith, and yet it has often been held that this statute may be satisfied by connecting together a signed and an unsigned writing, so that for all legal purposes the unsigned writing will be considered as signed by the party to be charged therewith. See case of Thayer v. Luce, 22 Ohio St., 62. But it is not necessary to go to the statute of frauds for an analogy.

In the case of Neil v. Trustees, 31 Ohio St., 15, the supreme court held that one who guaranteed the payments on a subscription paper and who attached such subscription paper to his written guaranty, was liable to be sued jointly with the signers of the subscription paper by reason of the fact that the guarantor thereby became liable on the same instrument with the subscribers. It was necessary to find that the guarantor was liable on the subscription paper (although he never signed this paper) in order that he could be sued jointly with the subscribers; the code providing, that persons "severally liable on the same obligation or instrument" might be joined in the same action. In deciding the case the court said: "The petition substantially shows, that the subscription and guaranty thereto annexed were delivered and accepted as one instrument, at the same time and place, upon the same consideration and for the same purpose. From these allegations, considered in connection with the instrument itself, we think it sufficiently appears that the liability of the subscriber and guarantor arises upon the same instrument."

But it is contended that the Neil case differs from the case at bar, because in that case the paper guaranteed was physically attached to the written guar-

anty, while in the case at bar the papers are not physicially attached. My answer to this is that cases of this character must be governed largely by the circumstances of each particular case; and that in this case the note of the Lock Co. and the guaranty of Mrs. Morrison are just as nearly attached as the circumstances of the case would permit. To illustrate; the guaranty was intended to cover not any one particular note of $5000, but any note or notes not exceeding $5000, that might be discounted by the bank within two years from the date of the agreement. The contract provided that the note or notes covered by the guaranty were to be entirely at the option of the bank. Therefore, whenever the bank exercised this option and selected a particular note to be covered by this guaranty, that note became part of the written instrument of guaranty; or to put it differently Mrs. Morrison then for all legal purposes became bound as surety on that note. It must be conceded that if she had attached a note for $5000 to her guaranty, or if she had recited such note in her guaranty, then the two would have formed but one instrument, and that she would have been liable as surety on the note although she might never actually have signed the note. This is clearly established in Neil v. Trustees, 31 Ohio St. But under the circumstances of this particular case it was impossible for her to do this; and therefore it was left to the bank to attach this note to the guaranty, in contemplation of law, by selecting a note in the future which was to be covered by the guaranty.

Another question which suggests itself to my mind is this: How can Mrs. Morrison be held liable in this action without connecting the note and guaranty so as to consider them both as one instrument. The statute of frauds provides that any agreement to answer for the debt, etc., of another must be in writing and signed by the party to be charged therewith. Her written agreement is not complete on its face. It becomes a complete agreement only when the bank has exercised its option and selected a note to be covered by the guaranty, thus making the note and guaranty one and the same instrument. If they can be made one instrument for one purpose— for the purpose of fixing her liability, why not for the purpose of this statute intended for the relief of sureties?

In Buck v. Bank, supra, recently decided by the supreme court of Georgia we find an instructive case with reference to the rights of a surety arising out of an extension of time granted the principal upon a note whereon the sureties' name did not appear. In this case Buck executed as maker a note for $2000 payable to Scott, the note stating on its face that it was given for the purchase money of land. Scott gave to the bank his individual note for $1500 on account of money loaned and deposited into the bank as security, the $2000 note of Buck's, duly endorsed, and also, delivered to the bank as an escrow a deed to certain lands, from Scott to Buck. The bank instituted an action on the $2000 note against Buck, and it was contended that this note was intended only as security for Scott's $1500 note, and that he (Buck) was released from liability by reason of an extension of time, for value, granted Scott on the $1500 note. This defense was sustained by the supreme court of Georgia. In so doing it is apparent that the court must have considered Buck a surety on the $1500 note. although he never in fact, signed it. In fact the parol evidence to show the fact of suretyship was admitted by virtue of a statute which provided that "when any person or persons hath heretofore or shall hereafter become bail on recognizance, or security on bond, note or other contract, and shall be sue thereon, it shall and may be lawful for such bail or security on the trial of such case to make special defense", etc. Now Buck did not claim to be security on the note of $2000 signed by him. He could not claim to have been discharged by reason of any extension of time of payment on the note he did sign., but he claimed that the whole transaction constituted him a surety in fact on the note for $1500 not signed by him; and it was on this theory that the parol evidence of suretyship was admitted. This is manifest from the opinion of the court where it is said: "It is argued that this (Buck's contention) would have applied had Buck signed the note for $1500, on which the money was advanced, but is inapplicable to the present case. We think the form of the contract can make no difference", etc.

Again the court said: 'The writings themselves and the parol evidence, show that the whole constituted but one transaction—but one contract.''

It does seem to me that sec. 5833 of Revised Statutes was intended to cover just such cases as the one at bar. "At common law, the surety who doubted the continued responsibility of his principal, was compelled to pay the debt himself before he could enforce collection at the hands of the debtor.''

According to the rule in this state a surety was not released from liability although he suffered a loss by reason of a creditor's unreasonable delay or total failure in enforcing a claim against the principal debtor. According to the rule prevailing before the enactment of this and similar statutes a surety was compelled either to pay the debt himself or go to the expense and trouble of bringing a suit against the creditor to compel him to proceed against the debtor. It was to obviate this manifest hardship that such statutes for the relief of sure-

ties were passed. As said in the case of McDowell v. Buttles, 2 Ohio, 303 "the object for this act is plainly to enable sureties to compel a creditor, where his debt is due, to pursue the principal debtor by suit or exonerate the surety. It was intended to relieve sureties when the creditor felt safe in the responsibility of the surety and took no steps to collect the debt, and it contemplates extending this relief in a different form from that of compelling the surety to pay the debt himself, and thus become the creditor and bring suit."

In Ins. Co. v. McCague, 18 Ohio, p. 65 the supreme court said, after quoting the above: "And the law will apply to every class of securities that may be brought by liberal intendment within its meaning."

Now apply the reasons for the enactment of this statute to the case at bar, and what do we find. The court below in its findings of fact expressly found that one of the reasons why the bank did not comply with Mrs. Morrison's demand to bring suit against the Lock Co. was that "said Lock Co. being then indebted to said bank in over $19,000, and said bank believing said company insolvent, desired not to push said Lock Co., but to nurse it, that at the time of the service of the said notice to sue, of September 1, 1894, on said bank, and down to November 24, 1894, the said Lock Co. had assets in Cincinnati subject to attachment over and above all encumbrances of greater value than the amount of said note * * * " and that on the 24th day of November, 1894, the said Lock Co. went into the hands of a receiver. In the face of this finding I am unable to see how any court can hold Mrs. Morrison liable upon her obligation of suretyship without violating the manifest and declared purposes of the statute in question.