## NEW ORLEANS GAS LIGHT COMPANY *v.* WEBB, Administrator of Stephenson's Estate.

The sale of a litigious right to an attorney not competent to purchase, is a nullity. But the sale does not annihilate the obligation of the debtor of that right; he is still bound to the vendor. It is the sale of the litigious right, and not the right itself, which the law avoids.

APPEAL from the District Court of St. Helena, *Penn*, J. J. S. *Halsey*, for plaintiff: What is prohibited? The sale of a litigious right to certain functionaries. What is the penalty of a contravention? The avoidance of

that which is done in contravention of that prohibition. What has been done in this case? The purchase of a litigious right. Therefore, it is the purchase of the litigious right which is void.

NEW ORLEANS<br>GAS LIGHT CO.<br>*v.*<br>WEBB.

If there could be any doubt as to the accuracy of this reasoning, or the correctness of this construction, it would be removed by ascertaining how similar expressions and provisions of the code must be construed. The 1139th article has a similar prohibition and a similar penalty. The purchase by a curator of property belonging to a succession entrusted to his administration, is forbidden, under pain of nullity, and responsibility for all damages caused thereby. Nullity of what? Of the purchase, certainly; not of the property purchased.

Permit us to expose the opinions advanced on the other side by an illustration. Suppose that A. sells a slave to B., who furnishes his obligation for the price. Afterwards, the vendor sues the purchaser for a rescision of sale, and for hire and damages, upon allegations of fraud. He obtains judgment, and B. appeals. Pending the appeal, A. sells his right to C., an officer of the court. The judgment is affirmed. C. attempts to enforce the right he has purchased, but is stopped by the plea of nullity, under article 2422 of the code.

If the right be extinguished by the act of selling it, what are the consequences of the theory? Who is the owner of the slave? Not C., because his purchase is null; not B., because there is a final judgment avoiding his title; not A., since his right is lost and extinct. It would be gratifying if the "*acumina ingeniorum*" would favor us with a solution of this difficulty.

*E. T. Merrick*, for defendant: Art. C. C., 2422, says, that the sale of a litigious right to an attorney, practising in the court in which said right is exercised, is under the "penalty of nullity, and having to defray all costs, damages and interests;" evidently meaning that the rights of the transfer vest in, and that he will recover, unless the penalty is invoked, by the interposition of the exception of litigious right. But the case at bar is still stronger; for the Gas Light Company, after the litigation had ceased, passed a resolution ratifying the transfer, thus doubly investing *Waterston* with all their rights; and, with this investure of rights, the final decree was passed against him. The Gas Light Company is now, therefore, attempting to exercise the rights then vested in *Waterston*, and is, so far, his "ayant cause," and the judgment against him must be *res judicata*, as to the Gas Light Company claiming subordinate to him. See 10 Toul. No. 211. 12 R. R. 577. *Irish* v. *Wright*, as to judgment binding upon the "ayant cause."

Second. Every person is presumed to know the law. Art. C. C. 12 announces that, "whatever is done in contravention of a prohibitory law is void, although the nullity be not formally directed." In this respect, our code agrees with the common law, and goes further than the Napoleon Code, which has no corresponding article with No. 12, of our code. Art. No. 2422 has formally decreed the nullity of the sale of a litigious right, to attorneys exercising their functions in the same tribunal. It must follow that the vendor and vendee both stand in the same position; violators of the law. they are in *pari delicto*. So are they viewed by Vinnius, in the passage cited by Troplong De la Vente, No. 196, "Inter pacta quæ *contra bonos mores* fiunt memoratur et pactum quo causidicus a litigatore litem redimet et convenit ut, nomine mercedis, certem partem hujus, pecuniæ et quæ adjudicata fuerit vel majorem aliquam summam in eventum litis accipiat." Duranton holds the same opinion, that the vendor is an accomplice, on account of the intended vexation to the opposite party, vol. 16, No. 145; and so indeed is he viewed by the civil law, particularly by Lex, Ne liceat potentioribus (Code 2, 14, 2,) which is also embodied in art. C. C. 2422. In using the strong language above, I do not wish to reflect upon the parties to the transaction; I wish only to assert that the thing done is against the prohibitions of law, is *malum prohibitum*. It is not my wish, nor within my province to say more. It seems, then, under our law, to follow, that the Gas Light Company cannot stand in a better situation than *Mr. Waterston* himself. The law will leave the opposer where he has chosen to place himself, in violation of law. It will not interpose its aid. *Gravier's curator* v. *Carraby's Ex.*, 17 L. R. 131, 143. *Denton* v. *Wilcox*, 2d Ann. 60. See the case of *Milne* v. *Davidson*, where the court refused to decree rent for a house let for an hospital in New Orleans, it being against a prohibition of law. 5 N. S. 409. See, also, *John Y. Davis* v. *James H. Caldwell*, 2 R. R. 271. *Pickett* and *wife*, v. *Clark*, 3 R. R. 81. The case of *Mulhollan* v. *Voohries*, illustrates the reason why art. 2422, was added to the code of 1825. For there both the judge

NEW ORLEANS and sheriff were purchasers. The articles 12 and 2422, C. C., being general,
GAS LIGHT CO. and their provisions being salutary, it is submitted that the court will apply them
*v.* alike to all cases which come within their letter and spirit.
WEBB.
The common law authorities are as numerous as our own. See *Patton* v.
*Nicholson*, 3 Wheaton, 204. *Armstrong* v. *Toler*, 11 Wheaton, 258. *Ex.
Cambiso* v. *Maffit*, 2 Wash., C. C. R., 98. *Craig* v. *Missouri*, 4 Peters, 410.
See also, particularly, *Bartle* v. *Coleman*, 4 Peters, 184. See also the numerous
authorities collected in the United States Digest, vol. 1, p. 110, title Agree-
ment. Validity as against Statutes, vi., sec. vii. on same subject. Also supple-
ment to same work, vol. 1, p. 69, Verbo Agreement, sec vi.

We urge upon the attention of the court the fact, that the provisions of art.
2422, did not exist in the code of 1808, and is a new provision of law, intro-
duced in 1825, and that it ought therefore to be construed in reference to the
other provisions of law then in force, and not in reference to any foreign system
of laws in which other principles prevail. 3 Martin, 185. *Agnes* v. *Judice*,
N. S. 164. *Abat* v. *Waterman.* 6th Ann., 300, *Burrows* v. *Pierce.*

Again, were this to be made an exception to the general rule, it would place
the parties who sell litigious rights to attorneys, in a better position than those
who make the like sale to any other person, because, while the sale to such
other person could only be enforced for the price actually paid, C. C., art. 2623,
yet, in this class of cases, the party would be subjected to a violent prosecu-
tion on the part of the attorney, and a renewal of the same litigation by the
vendor, without any relief, except the payment in full of a demand, which the
party, by his sale to the attorney, admits he is willing to take less for; which is
against the policy of the law. *Interest Republicae ut sit finus litium.* Bullard
& Curry's Digest, page 21, sec. 4.

By reference to the Code of Justinian, it will be seen that it was the intention
of the Lex. Anastasiana to benefit the person against whom the litigious right
was sought to be enforced, and not the transferor or transferee. So if a person-
was interposed, or a portion of a litigious right donated, still the transferee could
only exact the amount paid, and neither the transferor or transferee could re-
quire any thing more, or make any profit from the debtor or his goods. Codex
Liber 4, tit. 35, 1, const. 23.

The introduction of art. 2422 into the Code of 1825, is a remedial statute, and
should be so construed as to advance the remedy : To favor attorneys or their
vendors, in preference to other persons purchasing litigious rights, would not
advance the remedy. It would have the contrary effect. C. C., art. 18.

That art. 2422 was intended as a remedial statute, I think will appear by
reference to the old code, p. 368, sec. 130, which is the same as 2622, and per-
mitted the sale of litigious rights, but regulated the amount which might be
exacted of the debtor. Art. 2422 amounts to a prohibition; it says the thing
cannot be done, and denounces the penalty for its violation. All parties con-
senting to its violation, stand towards the courts in the same relation.

But this court will be urged to follow the modern decisions of the courts in
France, and the commentators on the Napoleon Code. In reply I have to say,
that, however distinguished for their profound learning they may be, those
decisions and opinions are rendered upon a system of laws, in many respects
radically different from our own; and this court, their equal in all things affecting
the rights of citizens of Louisiana, has asserted the right to construe for them-
selves, all laws with reference to the customs and habits of the people of Louisi-
ana, and the other laws passed on similar subjects by the legislature. Certainly
the ancient decisions in France under the ordinances, are more in accordance
with our legislation, and the tenor of American decisions, than those under the
Napoleon Code. *Merlin Verbo Droits litigeux*, No. 3.

By the court:

SLIDELL, J. The plaintiff recovered a judgment against the succession of
*Stephenson*, which was confirmed, (with the exception of the decree as to
privilege,) upon an appeal by the administrator from the entire judgment. The
case is reported in 2d Ann. 526.

While that appeal was pending, the company sold its claim to *Waterston.*
After judgment was confirmed by this court, *Waterston* instituted proceedings
upon the claim thus purchased, against *Webb*, praying for his dismissal from

office, and for a personal judgment against him, for the amount of the judgment obtained by the company, and to him, *Waterston*, transferred. In the progress of that cause, after other pleadings and proceedings, which it is unnecessary to detail, the defendant, *Webb*, plead a peremptory exception, in which he pleaded that *Waterston* could not maintain the action, because his purchase of the claim was the purchase of a litigious right, then in litigation in courts wherein said *Waterston* was then exercising the functions of an attorney at law ; and the exception concluded with a prayer, " that his, said *Waterston's*, demand being null, be dismissed." The cause being brought to trial upon the exception, it was decreed " that said exception be sustained, and plaintiff's action dismissed, and that the plaintiff pay the costs." This decree, upon appeal to this court, was affirmed. See *Waterston* v. *Webb*, 4th Ann. 174.

Subsequently, the *Gas Light Company* filed an opposition to an account rendered by *Webb* as administrator. In this opposition, the company alleges itself to be a judgment and mortgage creditor, by virtue of the judgment rendered in its favor, and affirmed by this court; and that the administrator had neglected to place its claim upon the tableau of distribution. It prayed that the tableau be amended, by placing its claim therein with its proper rank, and also opposed various charges in the administrator's account rendered. Thereupon, the administrator filed what his counsel calls " a motion, in the nature of an exception, to strike out said opposition of the *Gas Light Company*," on two grounds, which, as stated by the defendant's counsel in his brief, are in substance as follows : 1st. That the rights of the company having been transferred to *Waterston*, and being outstanding in him at the time of the final judgment against *Waterston*, were barred by said judgment, which has the force and effect of the thing adjudged.    2d. The *Gas Light Company*y, being in *pari delicto* with *Waterston*, in the violation of a prohibitory statute, is left without remedy, and cannot invoke the aid of the law, to relieve itself from the consequences of such violation.

Before considering the objection thus presented, it is proper to observe, that the reinvestiture of the claim in the company is not included in them, and we do not therefore consider ourselves called upon to notice that portion of the defendant's argument, which turns upon an absence of proof, that *Waterston* had abandoned, or retransferred to the company, any interest he may have acquired by the transfer to him, or that they had mutually assented to treat it as a nullity. And it is not for the defendant to complain that he has been held by the district judge, and is now held by a strict construction of his own pleadings ; because he has himself, upon technical grounds, excluded evidence showing that the present suit by the bank is in its own behalf; that the sale to *Waterston* was annulled ; and that there is no understanding between the plaintiff and *Waterston*, that he should participate in what the company may collect. And we are constrained here to add, that the record of this succession, which has been under the administration of *Webb* nearly thirteen years, contains abundant internal evidence of a disposition to weary out this creditor by delay ; and that this course was probably the reason which drove the company to attempt to sell its interest for whatever it could get. The struggles by *Webb* before was to thwart the claim by delay. The attempt now is to annihilate it.

We shall therefore confine ourselves to the ground taken in the exception, and will proceed to consider them, inverting, however, the order in which they were presented by the defendant.

The art. 2422 of the Civil Code, is in these words : "Public officers connected with courts of justice, such as judges, advocates, attorneys, clerks and sheriffs, cannot purchase litigious rights, which fall under the jurisdiction of the tribunal in which they exercise their functions, under penalty of nullity, and of having to defray all costs, damages and interest.

This article is found under the general title of sale, and under the second chapter of that title, which treats "Of persons capable of buying and selling."

There is another article of the code, which says, whatever is done in violation of a prohibitory law, is void.    Art. 12.

The proposition of the appellant, substantially assumes, that the sale of a litigious claim to an attorney at law, practising in the court where the litigation is pending, virtually extinguishes the claim itself.   This proposition pushes the penalty of the law, beyond its just and ligitimate consequences.

If the purchase by *Waterston*, was an utter and absolute nullity, then no title ever passed out of the company to *Waterston*.   But the utter nullity of the sale, surely does not involve the destruction of the thing sold.   Such an inference is not only illogical, but monstrous.

But was it a relative nullity ?  We think it was; that is to say, the debtor could set up the nullity, and avail himself of it, in resisting an action by the purchaser, as being a purchase reprobated by the law.

The thing sold was a litigious right.   The law said to this purchaser, you cannot purchase it.   If you attempt to do so, you do it under penalty of nullity. Nullity of what ? of the purchase.   The law avoids, at the instance of the debtor, what is done in contravention of the prohibition.   What was done in contravention? the purchase of a litigious right.   It is the purchase of the litigious right, which is avoided, not the litigious right itself.   The contract of *Stephenson* with the company, was not illegal or void.   The judgment rendered in favor of the company against his succession, was not illegal or void.   But it was against the law for *Waterston* to buy that claim ; and *Waterston*, having made an illegal purchase, was not permitted to enforce the claim so purchased. The door of justice was closed against him, not because the claim he had bought was void, but because he was forbidden to buy it.

It is a sound principle, that the annulling of a right, should result only from a clear expression of the legislative will in the particular case, enunciated in the law, and should not be supplied by the court.

Let us see what has been said by juris consults, upon a similar provision of the Napoleon Code.

The 1597th article of that code, is in these words : Les juges, leurs suppléants, les magistrats remplissant le ministère public, les greffiers, huissiers, avoués, défenseurs, officieux et notaires, ne peuvent devenir cessionnaires, des procès, droits et actions litigieux qui sont de la compétence du tribunal dans le ressort, du quel ils exercent leurs fonctions à peine de nullité, et des dépens, dommages et intérêts.

Upon this article, Troplong, with both eloquence and force, comments as follows: De tels pactes sont en effet honteux et contraires aux mœurs.   Ils ne font qu'attiser l'esprit de tracassereé et de litige ; ils transforment l'honorable ministere de defenseur ou d'officier ministériel en un trafic sordide, en une vile speculation, sur la position des pauvres plaideurs; ils sont une source de vexations pour les hommes timides, qui se voient aux prises avec des légistes enhardis par l'habitude des luttes judiciaires, animés par l'intérêt personnel, et armés de tous les piéges de la chicane.

Remarquez toutefois que le droit litigieux ne subsiste pas moins, et que le débiteur ne peut se prévaloir de ce trafic deshonnête pour se prétendre libéré. Aucune disposition de loi ne déclare la créance éteinte. Seulement, la cession est nulle et le débiteur peut en requérir la nullité pour se soustraire aux poursuites pleines d'âpreté d'un cessionnaire redoutable, et pour demander d'être mis en face de son véritable créancier. Troplong's Vente, No. 196.

Duranton also says : S'ils l'avaient entendu ainsi, ils l'auraient dit expressément, puisque l'annulation d'un droit ne doit résulter que d'une disposition formelle de la loi, les nullités ne pouvant être suppléies par le juge. D'où nous concluons que le droit n'est pas éteint par la nullité de la cession. Duranton lib. 3, tit. 6, No. 145.

The plea of *res judicata* is untenable. The decree in *Waterston* v. *Webb*, decided that he, being a purchaser of a litigious right, could not maintain an action to enforce it. It shut the door of justice against him, by decreeing in substance, that his purchase was null as to the defendant, but it did not adjudge the nullity of the right so purchased. This suit is brought by another party, and involves other questions, than those decided in that cause. The question there was, shall *Waterston* be permitted to sue ? The question here is, is the original debt avoided ?

The authority of the thing adjudged, takes place only with respect to what was the object of the judgment (à l'égard de ce qui a fait l'objet du jugement). The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them, against such other in the same quality. Civil Code, art. 2265.

The judgment of the district court is affirmed; the costs of appeal to be paid by the appellant.