OVERTON, J.
 

 This is a suit for an accounting and for judgment against defendant for $2,046.76 and for such other sums as an accounting may show to be due plaintiff, with legal interest on the total amount that the trial will disclose to be due, from judicial demand until paid.
 

 The suit is based upon allegations to the effect that in the autumn of 1920, defendant entered into an agreement with plaintiff to ship the latter 20 carloads of lumber, which plaintiff was to sell for the joint account of the parties to the agreement, and an accounting then made by each of the parties to the other; that it was agreed that the wood should be of such quality as would sell for firewood and for other purposes, but instead that defendant shipped only broken boxes and similar material; that the shipments made amounted to nothing more than the shipment of refuse; that plaintiff did the best it could with the material shipped, but that, after efforts on its part, lasting six months, the venture resulted in a loss to plaintiff of $46.76; that defendant shipped only 16 cars of wood instead of 20, as agreed upon; and that, had defendant shipped wood of the quality agreed upon, plaintiff would have made a net profit of not less than $2,000, which, when added to the loss of $46.76, stated above, makes a
 
 *73
 
 total loss to plaintiff of $2,046.76, the specific amount sued for.
 

 Defendant filed an answer to this demand, in which he sets forth that he purchased from the United States government, for $400, a quantity of miscellaneous wharf material, and building lumber, left over after the construction of the wharf of the United States Army Supply Base at New Orleans; that, after plaintiff had inspected the lumber at the Army Supply Base, it entered into an agreement by which it agreed to handle and dispose of the lumber as firewood, the agreement being that, after the cost of marketing the material was paid, defendant would be reimbursed the $400, paid by him for the lumber, and the parties would divide whatever profit remained; that defendant actually delivered all of the lumber purchased by him, consisting of 16 gondola cars, loaded to extra capacity; that plaintiff received, handled, and sold the wood, and has not accounted to defendant for his part of the joint venture. Defendant, then suing in reconvention, avers that, in the shipment made to plaintiff, there were approximately 40,000 feet, board measure, of merchantable lumber, suitable for building purposes, worth not less than $20 a thousand feet; that plaintiff sold or used this lumber as building material; that the remainder of the lumber shipped, which was suitable only for firewood purposes, and which consisted of 15 railroad cars, extra loaded, was worth $75 a ear; that plaintiff has sold this lumber and has rendered no account whatever to defendant; that defendant also paid for plaintiff, on account of the venture, certain small items of indebtedness, which are set forth in detail, and furnished plaintiff with a belt, worth $10, to be used on plaintiff’s machinery in preparing the lumber or wood for market. The prayer of the answer is that plaintiff’s demand be rejected; that defendant have and recover judgment in reconvention against plaintiff for $1,-304.12, with legal interest thereon from judicial demand, and for such other sums as an accounting may develop to be due.
 

 Considerable evidence was heard on the trial of the case. After considering this evidence, the trial court rendered judgment in favor of defendant, rejecting plaintiff’s demand, and judgment in favor of defendant against plaintiff for $945.31, with legal interest thereon from judicial demand. Plaintiff has appealed.
 

 Plaintiff has filed a motion to remand this case to the lower court. The facts that prompt this motion are that it appears that on September 30, 1924, while this appeal was pending, defendant sold to Eo.bert B. Ramos, one of his attorneys, all of his rights and interest in the judgment recovered by him, and authorized Ramos, if he saw proper, to prosecute and defend the suit in defendant’s name. Some 18 months later, Ramos, for the purpose of showing that he was the real party in interest, filed a motion in this court, attaching to the motion a copy of the sale, in which he brought to the attention of the court the transfer in question, and the authority vested in him to continue to prosecute and defend the appeal in the name of defendant, and asked that the sale be made a part of the record, and that he be so permitted to prosecute and defend the appeal. The court granted the order. Shortly before this appeal was heard, Ramos and Regan filed a motion to rescind the order, mentioned above, for the reasons, appearing in a copy of a notarial act, signed by them, and made part of the motion, in which it is declared that Ramos, fearing that the sale of the judgment to him would be considered the sale to an attorney at law of a litigious right, falling under the jurisdiction of a tribunal in which he exercises his functions, reconveys the judgment to defendant, and in which both parties to the act declared the sale to Ramos rescinded. The motion to rescind the order,
 
 *75
 
 making the sale to Ramos a part of the record, has not as yet been acted upon.
 

 The reasons assigned by plaintiff for ashing that the case be remanded are:
 

 “That the validity and extent of the assignment and revocation present matters of law and fact in which petitioner is vitally concerned and, therefore, it is proper that this cause should be remanded to the lower court in order to have the same tried and determined; that it is not proper that this court should pass upon these questions as a court of original jurisdiction.”
 

 We see no reason to remand the case. Plaintiff has disclosed none.
 

 The sale of a litigious right to an attorney at law, who practices before the court, which has jurisdiction of the right, is null. O. O. art. 2447; New Orleans Gas Light Co. v. Webb, 7 La. Ann. 164; Pipes v. Norsworthy, 25 La. Ann. 557; Kuck v. Johnson, 114 La. 781, 38 So. 559; Stafford v. National Fire Insurance Co., 164 La. 409, 114 So. 78. It is only the purchase of the litigious right that may be avoided, when made in contravention of law. The right itself is not destroyed by the unlawful purchase. New Orleans Gas Light Co. v. Webb, supra.
 

 In the case at bar, Ramos, fearing that the purchase made by him might be deemed in violation of law, entered into a contract with defendant, rescinding the sale and reconveying the judgment to the latter. By this act matters were placed in the same position as they were before Ramos purchased the judgment. It is not even contended that, prior to the rescission of the sale and the reconveyance of the property purchased, plaintiff tendered Ramos the price paid for the judgment in order to be released from it, as provided by article 2652 of the Civil Code. The facts before us are such as we may consider without first having to remand the case. The motion to remand is denied.
 

 On the merits, the case presents only questions of fact. Our brother of the lower court seems to have given the case painstaking care, and our reading of the record and examination of the case leads us to the conclusion that his findings of fact are correct and that he has done substantial justice between the parties. His reasons for judgment, which we adopt, omitting his statement of the issue, are as follows:'
 

 “I consider that the parties to the transaction were Regan on one side and the partnership of Illg & Valentino on the other, and I find that the agreement was that the profits were to be divided equally between these parties.
 

 “The proof is that Valentino and the father of his partner were taken by Regan to the Army Supply Base and there shown the wood or lumber which was to be handled. The preponderance of the evidence is that it was the same wood which was shipped by Regan to Illg & Valentino.
 

 “In this view of the facts, I can give no effect to the complaint of Illg and Valentino as witnesses regarding the quality of the wood they received. Besides, it was testified by Regan that no complaint was ever made by either Illg or Valentino regarding the quality of the wood until about a year after the shipments began and after disagreements had arisen between them.
 

 - “The agreement contemplated that Illg & Valentino were to handle the sale of the wood. That imposed upon them the duty of keeping accounts, and of accounting, fully and fairly, to Regan when an accounting was demanded.
 

 “Under a writ of subpcena duces tecum, Illg & Valentino produced two sheets torn out of an account book. The account book was not produced, although it appears to be in their possession. Sheet marked p-1, which was page 52 of the account book, begins with items carried forward, debits $567.74, credits $375.27. No explanation is made of these items, nor of the reason for not presenting the pages from which they are carried forward.
 

 “The account, such as it is, is confused and largely unintelligible. I must conclude that it is purposely unintelligible, particularly in that no detail is given of amounts received from the sale of wood.
 

 “Vouchers are presented showing expenditures for account of the transaction by Illg & Valentino totalling $541.62. Erom the account which is produced, I find that Illg & Valentino expended for the transaction, say $217.75 for whch no vouchers are presented. It is likely that this total was actually expended by them.
 

 “The wood in question was bought as scrap wood, and the purpose appears to have been to cut it up and sell it for firewood. However, according to the preponderance of the evidence,
 
 *77
 
 about 40,000 feet of merchantable secondhand lumber was culled from the lot and sold by Illg & Valentino. They have not accounted for these sales; in fact, they deny that any such lumber was received by them. Taking this lumber to have been worth say $20 per thousand, I find as a fact that Illg & Valentino received for the sale of it at least $800.
 

 ‘■Plaintiffs do not furnish any means of' arriving accurately at the quantity of firewood which was sawed up and sold, or the price which they received for it. Making the most of the help which the record affords, I conclude that the 40,000 feet of lumber would fill, say one ear. That would leave 15 cars of firewood; each car would contain -about 16 cords, making a total of 240 cords; each cord would make two wagon loads; a total of 480 wagon loads which must have been sold by Illg & Valentino for at least $3 per load, or a total of $1,440. The grand total of their receipts was, therefore, $2,240. The vouchered expenses of Illg & Valentino were $541.62. Their unvouehered expenses were $217.75. Regan paid for the wood and for the cost of loading it into cars $400, and he furnished Illg & Valentino a belt for their motor driven saw worth $10. The total expenses of the transaction were, therefore, $1,169.37, leaving a net profit of $1,070.63, of which Regan’s share, one-half, amounts to $535.31, and he is to be reimbursed his expenses of $410, making a total due him of $945.31, for which he is entitled to judgment.
 

 “Illg & Valentino being commercial partners, there will be judgment in solido against them for that amount on the reeonventional demand of Regan. The plaintiffs’ demands against Regan are rejected.”
 

 For the reasons assigned, the judgment appealed from is affirmed.