FOURNET, Justice.
 

 Plaintiffs instituted this suit to have annulled and set aside, on the ground of lack of consideration, a certain oil and gas lease and a deed of two-thirds of the minerals affecting eighty acres of land located near what is known as the Cotton Valley Oil Field in Webster Parish, Louisiana, executed by Willie Jordan as their (plaintiffs’) agent and attorney in fact in favor of James E.' Perkins.
 

 Defendant excepted to plaintiffs’ petition on the ground that B. S. SoRelle, who had acquired the léase from him (defendant) prior to the institution of this suit, was a necessary párty thereto. Whereupon plaintiffs supplemented and amended their petition alleging that they believed SoRelle acquired the lease in good faith without knowledge of the fraud' perpetrated upon them by his assignor (Perkins) and prayed for judgment against Perkins for the cancellation of the mineral deed and for the amount he' (Perkins) received as the consideration for the assignment of the lease to SoRelle. The trial judge maintained the exception and ordered the suit dismissed but, on a rehearing, amended his order so as to dismiss plaintiffs’ suit only in so far as it sought to cancel the lease.
 

 
 *944
 
 In his answer the defendant denied that the instruments sought to be annulled were executed without consideration and averred that the true and actual consideration for their execution was not the cash amounts recited in the acts but was, in fact, his (Perkins’s) agreement to furnish the necessary money to effect a redemption of plaintiffs’ property which had been sold at a tax sale to. H. R. Hayes and his actual payment of this amount at the request of Willie Jordan, agent of the plaintiffs.
 

 After the case was lodged here on an appeal. taken by the plaintiffs from a judgment dismissing their suit, they filed a- motion to remand the same to the lower court so that they might institute the necessary proceedings there to avail themselves of the provisions of Article 2652 of the Revised Civil Code and have themselves declared to be the owners of the two-thirds mineral interest in controversy, which had been transferred by Perkins to Paul L. Miller and John T. Campbell during the pendency of this suit, upon their payment of the consideration recited .in the deeds, with interest. See Lee v. Perkins, 192 La. 1049, 190 So. 126. Accordingly, rules were issued in the lower court, one against Perkins and Miller and the other against Perkins and Campbell, to show cause why the plaintiffs should not be granted this relief. Judgments were rendered in the lower court (1) in favor of plaintiffs, making the rule absolute with respect to the transfer from Perkins to Miller, from which judgment the latter two have appealed, and (2) against the plaintiffs, recalling the rule and rejecting their claim with respect to the transfer from Perkins to Campbell, and from this judgment plaintiffs have appealed.
 

 In our decision on rehearing in the recent case of Smith v. Cook, 189 La. 632, 180 So. 469, 473, we pointed out that the object of the articles of the Revised Civil Code dealing with litigious rights (Article 2652, etc.) “was primarily ‘to prevent the purchasing of claims from avarice or to injure the debtor. * * *’ And in order to carry into effect the purpose of the law, the one against whom the claim is purchased is permitted to invoke the provisions of the Civil Code, art. 2652, against such a purchaser and release himself therefrom by paying the purchaser the price of the transfer, together with interest from the date thereof. * * * He is given the absolute right to take over the third party’s deal or bargain upon reimbursing the transferee the price paid therefor with interest, and the matter is • considered as though he had compromised with his opponent for such amount.”
 

 In response to the rule taken with respect to the transfer from Perkins to Miller, it was urged as a defense that the recited consideration was never paid and that the same was executed solely for the convenience of Perkins and had as its purpose the placing of the community property out of his hands until such time as he could effect a settlement with his wife, who was contemplating divorce proceedings against him, and that, long prior to the time plaintiffs
 
 *946
 
 filed their motion to remand, the property had been retra'nsferred to him (Perkins) .
 

 In Illg & Valentino v. Regan, 166 La. 70, 116 So. 673, 674, this court refused to remand the case to the lower court because the attorney therein who acquired his client’s judgment while the case was pending on appeal here had “entered into a contract with defendant [his client], rescinding the sale and reconveying the judgment, to the latter,”. holding that “By this act matters were placed in the same position as they were before Ramos [the attorney] purchased the judgment.” (Brackets ours.)
 

 At the time we remanded this case to the lower court, we were not apprised of the facts with respect to the transfer, and, the mineral interest having been re-transferred by Miller to Perkins prior to the time the appeal was taken here, thus placing the status of this mineral interest in the same position it was before the transfer by Perkins, the judgment of the lower court authorizing the transfer of this interest to the plaintiffs upon their payment of the consideration recited therein, with interest, is, therefore, erroneous.
 

 On the trial of the rule with respect to the transfer from Perkins to Campbell, it was shown that the true consideration for this transfer, as evidenced by a.written contract of employment dated August 25, 1936, was that he (Campbell) would receive a half of Perkins’s interest in these mineral rights in return for his legal services in connection with this suit and Campbell stated that his reason for stipulating the consideration was $250 in cash was to facilitate any subsequent disposition he might wish to make of these rights.
 

 We have held that under the express provisions of Act No. 124 of 1906 attorneys-at-law may acquire by written contract with their clients “an interest in the subject matter .of the suit, proposed suit or claim, in the prosecution or defense of which they are employed.” See Hope v. Madison, 194 La. 337, 193 So. 666. We therefore conclude that the trial judge’s ruling dismissing plaintiffs’ demands with respect to this claim is .correct.
 

 Passing now to the main demand, it is necessary that a brief statement of the facts in this case be given in order that the same may be properly disposed of.
 

 Plaintiffs own the N. W.
 
 %
 
 of the N. E. % and the S. E. % of the N. W. % of Sec. 31, Tp. 21 N., R. 10 W., in Webster Parish, Louisiana, having inherited the same from their ancestors James and Elno'ra Lee, both deceased. The property was under lease to two of the grandchildren of James and Elnora Lee, Willie and Lloyd Jordan, for cultivation purposes, the consideration for such lease being that they would maintain the improvements and pay the taxes on the property. They failed to pay the 1931 taxes and the property was sold at tax sale on December 17, 1932, to H. R. Hayes; the tax deed, however, was not recorded until December 17, 1935. On the same day (December 17, 1935) Willie Jordan, who, during the month of August previous had procured from the plaintiffs a power of attorney authorizing him to redeem the property
 
 *948
 
 and also authorizing him to sell any portion of the oil, gas, and other minerals in and under the said land and to lease the same on such terms and for such price as he might deem fit, as the agent and attorney in fact of the plaintiffs, executed in favor of Perkins (1) a mineral lease, for the recited consideration of $80, and (2) a mineral deed conveying two-thirds of the minerals under the property, for a recited consideration of $75. Both of these acts were recorded on February 26 of the following year. On August 12, 1936, Perkins assigned the lease to B. S. SoRelle for $1,000 cash, and, on the same day, he tendered Hayes $140 in the form of a cashier’s check with the request that he (Hayes) execute a tax redemption deed. This check remained uncashed until Hayes was compelled to accept same and execute the deed in a subsequent court action.
 

 On- the trial of the main demand the plaintiffs, after obtaining Perkins’s admission on cross-examination that the cash considerations recited in the mineral deed and lease were never paid, and introducing the two instruments in evidence, rested their case.
 

 The defendant then offered evidence to prove his allegations that the true consideration of the mineral lease and deed was his promise to advance the necessary money for the redemption of the property and his actual payment thereof to Hayes.
 

 The plaintiffs sought - .to show that a fraud had been perpetrated upon them by Perkins and Jordan in securing their signatures .to the powers of. attorney in that it was represented to them (the plaintiffs) that it was necessary to execute these mandates so that they - might immediately redeem the property sold at tax sale to avoid the loss thereof because of prescription; and that it was further represented to them that Jordan would not have the authority under these mandates to execute- mineral leases or deeds, any negotiations with reference to leasing to be submitted to them for their approval and signature.
 

 Perkins objected to the introduction of this testimony on the ground that the plaintiffs, not having pleaded fraud, could not thus be permitted to enlarge their pleadings.
 

 It is true that under our jurisprudence this court will not pass on issues not raised by the pleadings unless the pleadings have been enlarged by testimony admitted without objection, but since neither replication- nor rejoinder are admitted under our pleadings, “When the defendant, in his answer, alleges on his part new facts, these shall be considered as denied by the plaintiff; * * * ” (Article 329, Code of Practice), and the plaintiff is then given “the right to prove on the trial any facts which might have been pleaded to defeat the defense set up in the answer. * * *” Webre v. Christ, 130 La. 450, 58 So. 145, 146. See, also, Flood v. Shamburgh, 3 Mart., N.S., 622; Skilliman v. Jones, 3 Mart., N.S., 686; Planters’ Bank v. Allard, 8 Mart., N.S., 136; Daquin v. Coiron, 3 La. 387; Bruce v. Stone, 5 La. 1; Thomson v. Brothers, 5 La. 277; Muse v. Yarborough, 11 La. 521; Segond v. Landry, 1 Rob.
 
 *950
 
 335; Holliday v. Marionneaux, 9 Rob. 504, 505; Riley v. Wilcox, 12 Rob. 648; Swilley v. Low, 13 La.Ann. 412; Mousseau v. Thebens & Reynolds, 19 La.Ann. 516; Lamorere v. Avery, 32 La.Ann. 1008; Hickman v. Dawson, 33 La.Ann. 438; Abshire v. Lege, 133 La. 254, 62 So. 667; Billington v. Sacred Heart Orphan Asylum, 154 La. 883, 98 So. 406; 39 Century Digest, Pleading, § 134, 1277; and 49 Corpus Juris 394, n. 5(E), p. 323.
 

 The Webre case, supra, is directly in point here. In that case the plaintiff, receiver of an insolvent corporation, was endeavoring to recover an unpaid subscription to the capital stock of the corporation he represented. The defendant admitted the contract of subscription but alleged the stock had been paid for by a transfer of certain stock he owned in two other corporations. On the trial the plaintiff proved the facts of the subscription, the appointment of the receiver, the insolvency qf the corporation,. etc., and, after the defendant proved the settlement of the stock as alleged in his answer, offered toi rebut this testimony by proving the worthlessness of the stock at the time of its transfer. The defendant objected to the introduction of such evidence and it was ruled out on the ground that the plaintiff, not having alleged fraud, could not prove it, for the defendant was not placed on his guard. This court reversed the lower court’s ruling, saying that’
 
 “All allegations in the answer are open to every objection of law and fact, as if specially pleaded; if the defendant be surprisedj the proper remedy is-d oontirmcmce or new trial.”
 
 (Italics ours.) -
 

 From a review of the record and ■ a careful analysis of the testimony we are convinced that Perkins never intended to, nor did he, in fact, bind himself to advance the necessary funds with which to redeem the property. This conclusion is strongly supported by the circumstances surrounding this entire transaction.
 

 The record reveals Perkins testified that he was approached by Jordan for an advance of the necessary money with which to redeem the property and that, after he and his attorney had examined the record, he agreed to make such advance in consideration for the granting to him of a mineral, lease on the property and a deed of two-thirds of the minerals. In order to carry out this agreement, instead of having the lease and deed prepared to be signed by the owners of the property, he caused powers of attorney to be prepared by his (Perkins’s) attorney, naming Jordan as plaintiffs’ agent and attorney in fact, and giving the said agent power to sell any or all of the mineral rights in the property and to grant mineral leases thereon for any consideration he, might see fit. He personally took Jordan in his own automobile, along with two young witnesses of his own choice (W. A. Holley and G. A. Moore), to obtain the signatures of the various plaintiffs, one of whom lived in Caddo Parish, another of whom lived in West Carroll Parish, and the remainder of whom, with the exception of the one residing in Washington, D. C. (whose signature was obtained by mail), resided in various sections of Webster Parish. ,
 

 
 *952
 
 Realizing they would have some difficulty in securing the signatures of all of the plaintiffs, Perkins and Jordan called on Jim Lee (the plaintiff to whom the other members of the family more or less looked for advice), took him to the office of the defendant’s attorney, and there had the attorney explain to him the provisions of the power of attorney; nevertheless, when on the witness stand, Lee stated that at the time he left the attorney’s office his understanding was that the purpose of the procuration was to effect the redemption of the property and that if any leases were to be granted on the property, they would be submitted to all of the owners for approval and signature.
 

 In this Jim Lee is corroborated by all o'f the plaintiffs. They all testified that Willie Jordan introduced the defendant to them, stating that he was going to lend him (Jordan) the money to redeem the property, otherwise they would lose it. They also testified that both Jordan and Perkins assured them their approval and signature would be necessary for the execution of any mineral lease on the property and that the powers of attorney were simply to effect the redemption.
 

 The defendant testified that the instruments were not only read by each of the plaintiffs, but that he himself read the same to them and told them the purpose of their execution was to give their agent, Jordan, the authority to execute in his (Perkins’s) favor a mineral lease on the property and a deed for two-thirds of the minerals in consideration for his advancement to Jordan of the necessary funds with which to redeem the property sold at tax sale. In this he is not only contradicted, as just demonstrated, by the plaintiffs, but he was also contradicted by the testimony of his own witnesses Holley and Moore, both of whom positively stated that the document was read to the plaintiffs by Jim Lee and not by the defendant, while Willie Jordan, who seemed to remember everything else that transpired, could not remember which of the two had read the document, Jim Lee or Perkins. The defendant also offered the testimony of Holley and Moore to corroborate the remainder of his testimony but we think their testimony has very little probative value because it was demonstrated under cross-examination that although they remembered the stereotyped statement that the documents were read to the plaintiffs and that it was explained to them that the purpose thereof was to authorize Jordan to execute the mineral lease and deed to the defendant for his advancement of the money with which to redeem the property, they were totally ignorant of any of the provisions contained in the document they claimed was read to the plaintiffs in their presence, clearly indicating that the documents were not read at all as testified by the plaintiffs. Moreover, the plaintiffs testified positively that when they signed the documents these two witnesses were not present and that if they came with the defendant, they remained in the car which was parked in front of the house.
 

 Furthermore, although these powers of attorney were obtained during the latter
 
 *954
 
 part of August of 1935, upon the defendant’s and Jordan’s representation that the plaintiffs would lose their property unless the same was redeemed immediately, for which purpose Perkins agreed to furnish the money promptly, the deeds in his favor, were only executed by Jordan on the day the tax purchaser recorded his deed, December 17, 1935 — nearly four months after the execution of the powers of attorney — and Perkins made no attempt to contact the tax purchaser until after he assigned the lease to SoRelle for a cash consideration of $1,000 on August 17, 1936, approximately eight months after the execution of the mineral lease and deed and approximately a year after the execution of the powers of attorney.
 

 We therefore conclude that the defendant has failed to establish the allegations of his answer.
 

 For the reasons assigned the judgment of the lower court is set. aside and it is now ordered, adjudged, and decreed that there be judgment in favor of the plaintiffs and against the defendant, annulling, the mineral deed executed on December 17, 1935, recorded in Conveyance Book No. 106, at page 538, of the records of Webster Parish, and ordering the cancellation of the same. It is further ordered, adjudged, and decreed that there be judgment for the plaintiffs and against the defendant in the sum of $1,000, subject to a credit of $140, with legal interest from August 12, 1936, until paid, and for all costs.
 

 LAND, J., absent.