McBRIDE, Judge.
To a full understanding of the controversies involved, a recitation of the events preceding these three suits is in order.
On April 8, 1960, Olga Pitre Vegas, Elta Hogan Matherne (individually and as tu-trix for her three children), and Joseph Hogan, Sidney Hogan, Thelma Pitre Gray and Ruth A. Pitre granted unto Irion Bordelon, Sr., an oil, gas and mineral lease bearing against and affecting their property located in Urbandale Farms, Parish of Jefferson, designated as Lot No. 1 of Section 12; the consideration for the lease as expressed therein was $70 cash paid by lessee. Said lease was made and executed despite the fact The Southern Natural Gas Company held a prior, outstanding, and effective oil, gas and mineral lease on the said property which was granted unto it May 1, 1957, by some of the same lessors and the ancestors in title of others. In both leases the lessors retained the usual landowners’ one-eighth royalty interest in all oil produced and saved from the said land.
*845 The Southern Natural Gas Company-lease was for a term of five years expiring May 1, 1962; the Bordelon lease was for a period of three years and three months terminating July 8, 1963.
On June 3, 1960, two identical documents were executed, one by Olga Pitre Vegas, Ruth A. Pitre and Thelma P. Gray and the other by Sidney Hogan, Elta Hogan Matherne and Joseph Hogan reading thus:
“MINERAL AND ROYALTY DEED
“THE STATE OF LOUISIANA. “PARISH OF Jefferson
“KNOW ALL MEN BY THESE PRESENTS:
“That Olga Pitre Vegas, Ruth A. Pitre, and Thelma P. Gray of the Parish of Jefferson, State of Louisiana, have granted, bargained, sold, conveyed and delivered and by these presents do grant, bargain, sell, convey and deliver with full guaranty of title and with complete subrogation of all rights and actions against all former proprietors of the property herein conveyed unto Irion J. Bordelon, Sr. -of the Parish of Jefferson, State of Louisiana, the following, to-wit: 100% interest in and to all of the oil, gas, sul-phur and other minerals on, in and under and that may be produced from the following described lands, situated in Jefferson Parish, Louisiana, to-wit:
“A certain piece or portion of ground in what is known as Urbandale Farms, as shown on a blueprint copy of a survey made by A. T. Dusenbury, C. E., -dated October 9, 1926, annexed to an act of mortgage before Victor K. Kiam, N. P., dated October 2, 1928, by Urban--dale Farms, Inc., and according to said plan said land is designated as lot No. one (1) of Section Twelve (12), and is hounded on the Eastern portion thereof by the Dugue Canal, on the South iby the Out Fall Canal, on the North by the Grand Cross Canal, and on the West by Grate Bar Marker, the above described property being all lands on the west side of the Dugue Canal that Wm. Jay Elmer purchased from Vic Pitre et al, on July 10, 1953, said act of sale is recorded in Jefferson Parish Conveyance Office Book Number 344, folio 110. It is the intention of the parties herein to sell all mineral interests on all the land within the boundaries above described regardless of the amount of acreage.
together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said lands for oil, gas, sulphur and other minerals and producing, mining, storing, treating, marketing and removing the same therefrom.
“The above described lands are now under and embraced in and covered by a mineral lease originally executed in favor of Southern Natural Gas and now held and owned by Southern Natural Gas; and it is understood and agreed that this sale and conveyance is made subject to said lease but covers and includes all of the royalty on oil, gas, sulphur and other minerals due and to be paid under the terms of said lease.
“It is agreed and understood that all of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said Irion J. Bordelon, Sr. In the event that the above described lease for any reason becomes terminated, cancelled or forfeited, then and in that event a full 50% interest in and to the oil, gas, sulphur and other minerals on, in and under and that may be produced from said lands shall be owned by the said Irion J. Bordelon, Sr.
“This sale is made for and in consideration of the sum of Thirty and no/100 Dollars, cash in hand paid to the *846 vendor herein by the vendee, the receipt of which is hereby acknowledged.
“TO HAVE AND TO HOLD, the above described property unto the said Irion J. Bordelon, Sr., his heirs, successors, legal representatives and assigns, forever.
“IN TESTIMONY WHEREOF, We sign this the third day of June, 1960.”
On July 22, 1960, Olga Pitre Vegas, Ruth A. Pitre and Thelma Pitre Gray appeared before a notary public and made an affidavit which they caused to be recorded and inscribed on the conveyance records of the Parish of Jefferson (C.O.B. 510 folio 631), reading as follows:
“BEFORE ME, the undersigned authority, a Notary Public, duly commissioned and qualified, in and for the aforesaid Parish and State, personally came and appeared:
OLGA PITRE VEGAS, RUTH A. PITRE and TPIELMA PITRE GRAY
each of whom being by me, Notary, first duly sworn, did depose and say:
“That as per instrument dated June 3, 1960 and filed for recordation in the office of the Clerk of Court for the Parish of Jefferson oh June 14, 1960, under instrument No. 181-104, registered in Mineral Lease Book 20, Page 379 an instrument purporting to be a mineral and royalty deed to Irion J. Bor-delon, Sr., covering the following described property, situated in the Parish of Jefferson, Louisiana to-wit:
“A CERTAIN PIECE OR PORTION OF GROUND IN WPIAT IS KNOWN AS URBANDALE FARMS, as shown on a blue print copy of a survey made by A. T. Dusenbury, C. E., dated October 9, 1926, annexed to an act of mortgage before Victor K. Kiam, N. P., dated October 2, 1928, by Urbandale Farms, Inc., and according to said plan said land is designated as Lot No. one (1) of Section Twelve (12), and is bounded on the Eastern portion thereof by the Dugue Canal, on the South by the Out Fall Canal, on the North by the Grand Cross Canal, and on the West by Grate Bar Marker, the above described property being all lands on the west side of the Dugue Canal that Wm. Jay Elmer purchased from Vic Pitre, et al, on July 10, 1953, said act of sale is recorded in Jefferson Parish Conveyance Office Book Number 344, Folio 110.
“Appearers declared, that the facts were misrepresented to them in connection with the aforesaid instrument and that by virtue of the aforesaid instrument, they have been defrauded of their rights in connection with said property, that said instrument is not what same was purported to be, that no consideration whatsoever has been paid to them in connection with the execution of said instrument, and that same was not executed by them in the presence of the witnesses, nor the Notary Public shown thereon.
“Appearers herein do by means of this instrument give notice to all parties of.the above and foregoing and that the aforesaid instrument is null and void, for the reasons as aforesaid, and that they are claiming all of their rights in and to the hereinabove described property as existed prior to the time of the execution of the above and foregoing instrument.”
On February 9, 1961, Irion J. Bordelon, Sr., filed suit seeking a mandamus against the Clerk of Court and the affiants above-named to have the inscription of said affidavit expunged from the conveyance records, it being alleged that the affidavit was without foundation of fact, creates a cloud on his Mineral and Royalty Deeds, that af-fiants had no legal right to have the same inscribed on the conveyance records, and the Clerk of Court and Ex-Officio Recorder should have refused to make the inscription.
*847 Bordelon’s suit was followed by two others; the plaintiffs in one of these are Ruth A. Pitre, Olga Pitre Vegas and Thelma Pitre Gray, and in the other Elta Hogan Mathcrne, Sidney Hogan and Joseph Hogan appear as plaintiffs. In these suits, directed against Irion J. Bordelon, Sr., the plaintiffs seek a cancellation of the above-quoted Mineral and Royalty Deeds executed in Bordelon’s favor on June 3, 1960, on several alternative grounds, the first of which is that “although said instrument purports to recite a consideration, no consideration has been paid * *
All three lawsuits were consolidated for the purpose of trial below, and after trial on the merits, a separate judgment was rendered in each. In the Bordelon suit his demand for a writ of mandamus was rejected; in the other two suits there were judgments in favor of the plaintiffs declaring the above-quoted Mineral and Royalty Deeds held by Bordelon to be null, void and without legal effect and ordering the cancellation thereof from the conveyance records of the Parish of Jefferson. The trial judge was of the opinion that the Mineral and Royalty Deeds had been obtained by Bor-delon by means of fraudulent representations he had made to the grantors.
Bordelon took his suspensive appeal from each of the three judgments and the causes were consolidated for the purpose of argument before us.
We are not concerned with the attack by the grantors on Bordelon’s Mineral and Royalty Deeds for fraudulent misrepresentations, but rather with the first ground of attack, i. e., that there was no consideration for the deeds by which the grantors are said to have conveyed to Bordelon their royalty interests under The Southern Natural Gas Company’s lease, together with other rights and benefits the deeds recite, such as:
“It is agreed and understood that all of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said Irion J. Bordelon, Sr. In the event that the above described lease for any reason becomes terminated, cancelled or forfeited, then and in that event a full 50% interest in and to the oil, gas, sulphur and other minerals on, in and under and that may be produced from said lands shall be owned by the said Irion J. Bordelon, Sr.”
Although each deed states that the consideration therefor was the sum of $30 cash in hand paid to the vendor (grantees) by the vendee, Bordelon freely and frankly admits there was no cash payment whatever made by him as consideration for the execution of the controverted deeds.
It appears from the evidence that when Bordelon learned the lease he held from Olga Pitre Vegas et al was primed by The Southern Natural Gas Company’s lease, he called upon Ruth A. Pitre to discuss the matter and she referred him to her attorney, Mr. Bernhardt C. Heebe. Bordelon called upon the attorney and informed him of the state of affairs and wanted to know what could be done to rectify the matter. Mr. Heebe testified that he told Bordelon that he would do everything he could in order to keep “those mineral rights alive.” Bordelon informed the attorney that the lessors owned other property near that embraced by the lease and that he might be able to get a drilling contract on said other property which “may help to keep these mineral rights alive.” Mr. Heebe denies emphatically that there was any discussion with Bordelon regarding a sale by Olga Pitre Vegas et al of their one-eighth landowners’ royalty retained in The Southern Natural Gas Company’s lease.
Ultimately Olga Pitre Vegas et al executed the Mineral and Royalty Deeds which had been prepared by Bordelon. He contends :
“The consideration was Ten ($10.-00) Dollars apiece that I paid for the lease; and in turn, the lease was not valid, so instead of getting my money back they agreed to sign the docu *848 ment — Mineral and Royalty Deed — for the money I had paid them.”
If the Mineral and Royalty Deeds had been executed, as Bordelon testified, in reimbursement of the rentals he paid under the lease, it is reasonable to suppose that the deeds would have so stated. It is also reasonable to believe that whereas there was no such recitation in the deeds, Bordelon would, within a reasonable time, either have taken some steps looking to the cancellation of the inscription of his lease from the conveyance books or surrendered the document duly voided to the grantors. As the inscription remains uncancelled and he is still in possession of the lease, he obviously has retained whatever rights he had thereunder while at the same time he is claiming title to the landowners’ royalty rights under the first lease and other benefits under the Mineral and Royalty Deeds. We do not agree with his contention that his lease was null because of the existence of the prior lease. On the contrary, it had some real and substantial value. The Southern Natural Gas Company’s lease was to expire on May 1, 1962, while, on the other hand, Bordelon’s lease did not expire until July 8, 1963, so, therefore, if for any reason the first lease terminated on or before May 1, 1962, the second lease would have immediately come into full force and effect and bound the lessors.
The grantors testified they had no discussion or understanding with Bordelon regarding any sale or disposition of their royalty interests under The Southern Natural Gas Company’s lease or that Bordelon was seeking recoupment of the money he had paid as consideration for his lease. They Say they thought, because of Borde-lon’s representations to them, that he was merely seeking to amend the lease so as to include therein the other piece of property which they owned; It makes no difference whether Olga Pitre Vegas et al read the Mineral and Royalty Deeds or were acquainted with or understood the contents thereof. There was simply no consideration given by Bordelon for the transactions.
Once Bordelon admitted on the witness stand that there was no cash paid in consideration for the deeds as recited therein, the burden of proof then rested upon him to prove that there was other real and actual consideration therefor and this he has not done. See Lee v. Perkins, 195 La. 939, 197 So. 607, and The Hunter Company, Inc. v. Commissioners of Bossier Levee District of Louisiana, La.App., 115 So.2d 226.
An obligation without a cause or with a false or unlawful cause can have no effect. LSA-C.C. art. 1893. By the cause of the contract is meant the consideration or motive for making it. LSA-C.C. art. 1896. A contract to be valid must have a cause or consideration. In re Canal Bank & Trust Co.’s Liquidation, 178 La. 575, 152 So. 297; Tippins v. Pine Valley School, La.App., 173 So. 566; Barnes v. McCartney, 3 La.App. 145.
For the foregoing reasons, the three judgments appealed from are affirmed.
Affirmed.