GULOTTA, Judge.
Plaintiff appeals from the dismissal of his claim for employment contract benefits asserted against his former employer, First Durham Corporation and the corporate president and principal stockholder, Dr. B. R. Eubanks. Entitlement is claimed by plaintiff to an unpaid two years annual bonus of $3,000 and return of the sum of $10,000 paid to Eubanks for the purchase of worthless corporate stock.
Defendant’s reconventional demand for losses sustained because of plaintiff’s mismanagement was dismissed by the trial judge. Judgment was rendered, however, in favor of defendant in the sum of $2,700 plus interest and attorney fees on six promissory notes executed by plaintiff.
We affirm that part of the judgment which dismisses plaintiff’s bonus claim; however, we reverse that part of the judgment which dismisses plaintiff’s claim to the $10,000. The award in favor of defendant, in the sum of $2,700 is amended to delete interest and attorneys’ fees and as amended is affirmed. This amount is an offset against the $10,000 award in favor of plaintiff. Defendant’s reconventional demand for mismanagement is dismissed.
On August 3,1971, Kosbab, who was then living in Wisconsin and employed by Swiss *53 Colony Inc., entered into an employment contract with First Durham Corporation (owner of two local Swiss Colony franchises) for the management of the franchises. Eubanks was the president and owner of nine-hundred-ninety-eight shares of the one thousand initially authorized capital stock of the corporation. Subsequent to negotiations between Eubanks and plaintiff’s attorney, agreement was reached for the payment to plaintiff, of an annual salary of $9,500; moving expenses; a company automobile to be paid for by plaintiff through yearly deductions from plaintiff’s salary; hospital coverage; and, an annual bonus of ten percent of net profits, in excess of $5,000.
According to Kosbab, in April 1972, Eu-banks agreed, on behalf of the corporation, to pay plaintiff a guaranteed annual bonus of $3,000. Eubanks denies any agreement was made for a guaranteed bonus. However, undisputed is the fact that Eubanks agreed to assist Kosbab in making a $10,000 bank loan to be used in the purchase of corporate stock by plaintiff.
The $10,000 check, dated April 27, 1972, received by Kosbab for the loan, was endorsed by plaintiff and endorsed also “for deposit only, B. R. Eubanks”, and deposited, presumably into Eubanks’ personal account. Thereafter six $450.00 notes were executed by Kosbab in favor of Eubanks for which Kosbab received $2,700.[1] This amount was to be used to repay the bank loan.
According to Eubanks, plaintiff agreed that no stock certificates would be issued at that time, but issuance would be deferred until the value of the stock could be determined, based on square footage cost of a newly acquired Memphis outlet.
On October 22, 1973, (which followed an October 18th agreement to buy and sell) First Durham Corporation sold the Swiss Colony stores. Although defendants claim that plaintiff had knowledge of the sale, Kosbab insisted that he knew only of the Memphis store sale, which he thought was for the purpose of obtaining cash in order to obtain a new local Lake Forest store.[2] The October 18th agreement to sell warrants to the purchaser that all owners of the corporate stock (Dr. Eubanks, Mrs. Billie Eubanks and Mrs. Ernest L. O’Bannon, shareholders [3]) expressly consent to the sale. This agreement was not signed by plaintiff. Furthermore, in the October 22, 1973 sale, reference is made to the authorization resolution adopted by the “unanimous written consent of all of the shareholders of said corporation.” Although the act of sale contained a recitation that the resolution is attached, we find no such attachment.
On November 21, 1973, following the October sale, a corporate stock certificate for forty-three shares was sent to plaintiff by Eubanks.[4] Plaintiff testified that since April, 1972 he had frequently inquired about the issuance of the stock; however, Eubanks (although admittedly acknowl *54 edged these discussions) claimed that plaintiff had not made any formal demand for the stock certificate.
At the time the stock ownership was transferred, the stock, for all intent and purposes, was worthless. Earl Pedelahore, Jr., a CPA who had examined the corporation books for the period 1971 to 1973, during which time plaintiff managed the outlets, testified that at the time plaintiff received his shares of stock, the company had no operating assets and the stock was worthless paper. He indicated further that the corporation “had no chance to make any future profits because it did not have any operating assets.” On April 27, 1972, however, at the time plaintiff entered into the agreement to purchase the corporation stock from the defendant, and made the $10,000 payment to Eubanks for the stock, the corporation owned assets in three Swiss Colony stores and gross sales had materially increased over 1971 sales.[5] The stock, at that time had some value.
Pedalahore further testified that there had been no entry in the books or records of the corporation concerning the $10,000 plaintiff invested, but that it had appeared only on the tax return, or on the balance sheet prepared in connection with the tax return, and that the $10,000 was listed as a deposit to plaintiff.
John Newsham, a CPA who had prepared the corporation income tax returns, indicated that although plaintiff was listed as a creditor of the corporation, to the extent of $10,000, he was not paid this amount as a creditor at the time the stores were sold because he was regarded as a stockholder of the corporation.
The evidence considered, it is clear that at the time that plaintiff paid for the purchase of the corporate stock, the corporation was a going and viable business and enjoyed substantial growth in gross sales with three franchise outlets. After the sale, the corporation had $14,000 in cash but owed defendant $128,000. The other creditors had been paid. At the time of the delivery of the stock certificate, on December 11,1973 (the stock certificate was dated November 21, 1973), the stock was worthless.
Under the circumstances, we conclude that no consideration was given to plaintiff by the corporation, or Eubanks, for the $10,000 payment. In such instance, an agreement can have no effect and the parties are restored to their respective positions as if no contract had been made. C.C. 1893; C.C.1896; State v. Justice, 160 So.2d 844 (La.App. 4th Cir., 1964), writ refused, 245 La. 1084, 162 So.2d 574 (1964) and cases cited therein. Accordingly, plaintiff is entitled to the return of the $10,000 paid for the worthless stock.
Plaintiff paid to Eubanks $10,000 for the purchase of stock owned by Eubanks and the stock ownership was not transferred (at a time when it had value) to plaintiff. Because the payment was made by plaintiff to Eubanks individually and deposited to his account, and not the corporate account, plaintiff is entitled to recover the payment from Eubanks individually. We are not concerned here with the question of piercing the corporate veil or Eubanks’ immunity from payment of a corporate debt. Under the circumstances we conclude that Eubanks, individually, is liable for the return to plaintiff of the $10,000.
We reject plaintiff’s claim of entitlement to a guaranteed bonus. The August 3,1971 employment contract states that a bonus would be paid “based on the figure of ten percent of net profits after $5,000 was made and retained by the corporation.” According to plaintiff, this part of the employment contract was modified in 1972 to guarantee a $3,000 bonus. Plaintiff points out that a letter dated March 10, 1972, addressed to “To Whom It May Concern”, and signed by Eubanks, as president of the corporation, reads in part: “. In addition to his base salary, he (plaintiff) is *55 on an incentive program and earns a bonus of some $3,000 a year . . Defendant, on the other hand, indicated that no agreement had been made with plaintiff for a guaranteed bonus. He explained that the letter referred to by plaintiff, was written to assist Kosbab in making a loan to purchase a home and the letter, so phrased, was to be used to assist plaintiff in acquiring the loan. Eubanks further testified that the letter was written, with the intent to convey that Kosbab could “earn” a $3,000 bonus but not that he was guaranteed this bonus.
Whether or not the parties agreed to a bonus based on profits, or a later modified guaranteed bonus is a credibility determination. Although no written reasons were assigned, the trial judge apparently resolved the credibility determination in favor of defendant. We find no error in this determination. The record contains evidence to support this finding. Although plaintiff is entitled, under the employment contract, to receive a bonus based on net profits, the record fails to contain any evidence of corporate net profits during the term of plaintiff’s employment. Accordingly, plaintiff has failed to establish entitlement to any bonus.
The trial judge awarded defendant a judgment on his reconventional demand in the sum of $2,700 together with interest and attorneys’ fees. This indebtedness is represented by six $450 promissory notes and includes payment of attorneys’ fees upon Kosbab’s default. Because we have concluded Eubanks was indebted to Kosbab in the sum of $10,000 at the time the notes were made, plaintiff was never in the position of a debtor owing $2,700 to Eubanks. We conclude the $2,700 was not loaned to Kosbab but was in the nature of part payment of the amount paid by Kosbab to Eubanks. Consequently, there was no consideration for the notes. Under these circumstances Eubanks is entitled only to a set off of $2,700 but is not entitled to the interest and attorneys’ fees stipulated in the notes.
Defendant failed to support his claim for mismanagement losses. Accordingly, we do not disturb that part of the judgment dismissing this reconventional demand.
DECREE
Consistent with the foregoing, the judgment of the trial court is annulled and set aside. Judgment is now rendered in favor of plaintiff, Paul M. Kosbab and against B. R. Eubanks in the sum of $10,000 together with interest from date of judicial demand. Judgment is rendered in favor of B. R. Eubanks and against plaintiff in the sum of $2,700 with interest from date of judicial demand. This amount is to be offset against the judgment in favor of plaintiff. Plaintiff’s claim for entitlement to a bonus is dismissed. Defendant’s reconventional demand for claimed mismanagement losses is also dismissed. Costs to be divided equally between the parties.

JUDGMENT ANNULLED AND SET ASIDE.

JUDGMENT RENDERED.

. The notes were dated June 12, 1972, September 6, 1972, December 4, 1972, February 28, 1973, June 1, 1973 and November 23, 1973.

. In this connection, a former employee testified that he and his wife were called by defendant on the eve of the sale and told about the sale, but were requested by Eubanks not to divulge this information to Kosbab because Eu-banks wanted to inform plaintiff.

. Kosbab was neither listed, nor included, as an owner of stock of the corporation.

. In the articles of corporation, dated September 1968, the authorized capital stock was 1,000 shares. Eubanks owned 998 shares. His wife owned one share and a secretary owned the remaining share. The original agreement in April, 1972 apparently contemplated that plaintiff was to purchase shares of stock from Eubanks upon payment of $10,000. However, according to Eubanks, his CPA advised him that in order to reduce his tax liability, the corporation should issue the shares to plaintiff. This advice was given to Eubanks in May, 1973. Thereafter, on May 21, 1973, an amendment was made to the articles of the corporation, increasing the authorized capital stock to 10,000 shares. Eubanks, his wife and the remaining shareholder appear and execute the corporate amendment authorizing the stock increase and represent, in that document, that they are authorized to execute the amendment by unanimous consent of the shareholders. Reference is made to the signed consent document, but the document is not attached to the charter amendment.

. Gross sales in 1971 was $231,471.62; in 1972 —$378,401.00; in 1973 — $536,197.33. In 1972 the assets were $177,876.36 and in 1973 the corporation had $183,000.00 in accounts receivable and an automobile.